794 P.2d 355
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Gilbert JIMENEZ, Defendant–Appellant.**

**No. 11617.**

Court of Appeals of New Mexico.

Feb. 1, 1990.

Certiorari Granted March 6, 1990.

ing the state's right to terminate defendant's participation in a preprosecution diversion program, based on defendant's non-wilful failure to make full restitution to the victim. Reversed and remanded.

Defendant signed a promissory note to the victim in which he agreed to make restitution of monies alleged to have been embezzled. When defendant failed to make reimbursement in accordance with the terms of the note, representatives of the victim referred the matter to the district attorney. After investigation, defendant was accepted into a preprosecution diversion program, and the state and defendant entered into a PDA, which included, among other things, a requirement that defendant make full restitution to the victim in the amount of $2,853.98. Under the terms of the agreement, defendant's prosecution was to be deferred for a period of twenty-four months, and defendant was to make payments to the victim of $200 per month for thirteen months, commencing July 1987, and a final payment of $53.98 on the fourteenth month.

Defendant made payments of $200 in July and August of 1987; $100 in December 1987; $50 in October 1988; and $100 in December 1988, totalling $650. Although defendant was in arrears in making payments as required by the PDA, defendant and his attorney met with the director of preprosecution diversion in November 1987, and the director agreed not to terminate the agreement conditioned upon defendant's promise to pay $250 in December 1987, on the unpaid balance of the restitution. Defendant failed to make the December payment but kept giving his assurances that he would make the payment in a few days.

During this period defendant was employed from November 12, 1987 until December 17, 1987. From December 1987 to February 1989, defendant worked as a substitute school teacher and earned approximately $200 per month. In January 1988, defendant's wife became employed and has earned approximately $200 per month since that time. At the time of the hearing before the district court, defendant was

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Jonathan A. Abbott, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

Defendant appeals from a judgment of the district court affirming the state's right to terminate its preprosecution diversion agreement (PDA) with defendant and permitting the state to proceed with criminal prosecution against him for embezzlement. The sole issue presented on appeal is whether the district court erred in uphold-

married, with five minor children, and the family was receiving food stamps.

After defendant failed to make the December 1987 payment of $250, the prosecutor notified defendant by a letter dated January 21, 1988, that the PDA was thereby terminated because of defendant's failure to pay restitution "in violation of [the] Preprosecution Agreement."

Defendant petitioned the district court for a hearing to determine whether he had improperly violated the terms of the PDA. Following a hearing on defendant's motion, the trial court adopted findings of fact and determined, among other things, that defendant executed on July 28, 1986,

a Promissory Note bearing the date of July 14, 1986 in the principal amount of $2,968.98 payable to * * * (victim) to be paid at the rate of $100.00 per month starting September 15, 1986 and the 15th of every month thereafter with no interest so long as payments are timely made but [with] interest at 12% per annum if payments are not timely[;]

that the amount of restitution paid by defendant during the term of the PDA totalled $650; that defendant's failure to make restitution in accordance with the PDA was not wilful, "but was caused by his inability to pay restitution because of his financial situation"; that defendant had executed a promissory note in favor of the victim and that "[a]s of the current date the original note cannot be found by the victim, and there is no evidence upon which the victims [sic] could enforce their [sic] civil right of recovery"; that the preprosecution agreement would expire on July 7, 1989; and that "[t]he State would not have terminated [defendant] from the Preprosecution Program if he had made the restitution payments required of him or realistically been able to make them in the balance of the preprosecution term remaining at the time he was notified of the termination."

Among its conclusions, the court decided that the state could properly terminate defendant's participation in the preprosecution diversion program and commence criminal prosecution against defendant; that if defendant were prosecuted for the original offense and convicted, there existed several alternatives to imposing a penalty of imprisonment, including imposition of a deferred sentence with probation, or imposition of a suspended sentence with probation, "each of which could provide for restitution over a period of time sufficient to insure full victim restitution"; and that termination of the PDA was within the statutory authority of the state and did not violate defendant's constitutional rights.

TERMINATION OF PREPROSECUTION DIVERSION AGREEMENT

■ Defendant contends that the trial court improperly determined that the prosecutor could lawfully terminate the PDA, despite the court's finding that defendant's failure to pay restitution was non-wilful in nature.

NMSA 1978, Section 31–16A–7 (Repl. Pamp.1984) governs preprosecution diversion agreements. This statute provides, in applicable part:

A. A defendant may be diverted to a preprosecution diversion program for no less than six months and no longer than two years. A district attorney may extend the diversion period for a defendant. as a disciplinary measure or to allow adequate time for restitution, provided that the extension coupled with the original period does not exceed two years.
* * *

B. If a defendant does not comply with the terms, conditions and requirements of a preprosecution diversion program, his participation in the program shall be terminated, and the district attorney may proceed with the suspended criminal prosecution of the defendant.

C. If the participation of a defendant in a preprosecution diversion program is terminated, the district attorney shall state in writing the specific reasons for the termination, which shall be available for review by the defendant and his counsel.

■ Although a prosecutor is invested with broad discretion in determining whether or not to enter into a PDA, once the

state and a defendant have executed such an agreement, the defendant has a right to petition the district court for a determination of whether the prosecutor has improperly terminated the agreement in violation of the statute or contrary to the defendant's due process rights. *State v. Trammel,* 100 N.M. 543, 673 P.2d 827 (Ct.App. 1983). *See also State v. Larson,* 107 N.M. 85, 752 P.2d 1101 (Ct.App.1988); *State v. Marino,* 100 Wash.2d 719, 674 P.2d 171 (1984) (en banc); *see generally* Annotation, *Pretrial Diversion: Statute or Court Rule Authorizing Suspension or Dismissal of Criminal Prosecution on Defendant's Consent to Noncriminal Alternative,* 4 A.L.R. 4th 147 (1981); Comment, *An Analysis of State Pretrial Diversion Statutes,* 15 Colum.J.L. & Soc. Probs. 1 (1979).

In *Trammel* the prosecutor terminated the defendant from a preprosecution diversion program despite his claim that he had not violated his agreement. On appeal, this court determined that where a defendant challenges the grounds relied upon by the state for terminating such an agreement, he is entitled to apply to the district court for judicial review of his claim that the state has broken its promise and arbitrarily terminated the agreement. *Trammel* also recognized that in reviewing a defendant's claim of wrongful termination, the central factual issue is whether the defendant has failed to comply with the terms of the agreement, and correlatively, whether the state terminated such an agreement in violation of Section 31–16A–7. *Id.* 100 N.M. at 547, 673 P.2d at 831.

Proceedings to review the lawfulness of a defendant's termination from a preprosecution diversion program have been analogized to probation or parole revocation proceedings. Thus, it has been held that a defendant who is participating in such a program has a conditional liberty interest, is entitled to procedural due process protections, and may not be terminated contrary to the principle of substantive due process. *State v. Devatt,* 173 N.J.Super. 188, 413 A.2d 973 (App.Div.1980); *State v. Lebbing,* 158 N.J.Super. 209, 385 A.2d 938 (Law Div. 1978); *Commonwealth v. Melnyk,* 378 Pa. Super. 42, 548 A.2d 266 (1988). Such cases

have relied generally on United States Supreme Court decisions. *See, e.g., Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Similarly, in *Larson* this court recognized that inquiries into the question of whether or not a state may be required to honor an agreement of non-prosecution are governed by due process principles.

The United States Supreme Court in *Bearden* recognized that revocation of an indigent defendant's probation based upon his failure to make restitution involves both due process and equal protection considerations. *Bearden* also held that in reviewing a motion to revoke probation based upon defendant's non-wilful failure to pay restitution, the court must consider possible alternatives to imprisonment before revoking an indigent defendant's probation. Only if other existing alternatives are insufficient to satisfy the state's legitimate penal interests may the probationer be imprisoned by the court. *Id.; see Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

The due process clause imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *Black v. Romano.* The consideration of alternatives to incarceration before probation is revoked is a substantive limitation recognized by *Bearden,* if the defendant has violated a condition of probation through no fault of his or her own. *Id.; cf. United States v. Ortiz,* 733 F.2d 1416 (10th Cir.1984) (extension of probation solely because of defendant's inability to pay fine through no fault of his own did not violate fundamental fairness because it involved an alternative to incarceration contemplated by the Court in *Bearden* ). Applying *Bearden* to a case involving a preprosecution agreement, in *Melnyk* the Pennsylvania Superior Court found that if a defendant does not have the ability to pay restitution despite bona fide efforts to do so, and the state indicates that defendant would have been eligible for the preprose-

**216**

cution agreement except for inability to make restitution, the state must consider alternatives to conditions for entrance into and completion of a preprosecution agreement.

In *Devatt*, the court considered a case analogous, in part, to the present proceeding. There, husband and wife were indicted for fraud. The state agreed to admit the defendants into a pretrial intervention program conditioned upon defendants' promise to make restitution in the amount of $2,394 to the victim prior to the expiration of a three-month period. Before expiration of the three-month period, the state sent notice of termination of the agreement to the defendants because of their failure. to make restitution. Following a hearing, the trial court entered an order upholding the state's termination of the pretrial intervention agreement, based upon the defendants' failure to comply with the conditions of the agreement. On appeal, the court reversed the order of the trial court and observed:

> In *Gagnon v. Scarpelli* and *Morrissey v. Brewer* the United States Supreme Court held that constitutional due process requires a hearing before either probation or parole may be revoked. The prospect of termination of a pretrial diversionary program also threatens "grievous loss" for which procedural fairness becomes essential. * * * [B]efore termination may be ordered, minimum due process requires the State to afford defendants an opportunity to be confronted with evidence in support of or to present evidence against the conclusion that mere noncompliance with a condition justifies withdrawal of the diversionary privilege. Thus, the mere failure to make full restitution within the prescribed time period may not in itself support the conclusion that defendants have failed or refused to cooperate in such a wilful and knowing manner as to have forfeited their right to further participation. * * *

Our primary concern must be whether revival of the criminal process is the consequence of an honest and unintentional inability to repay within the brief time allowed, thereby exposing these defendants to potential deprivation of liberty because they are indigent, although others facing similar charges but with access to immediate funds are permitted to enjoy the advantages of the diversionary system. *See State v. De Bonis*, 58 N.J. 182, 276 A.2d 137 (1971); *People v. Williams*, 247 Cal.App.2d 394, 55 Cal. Rptr. 550 (D.Ct.App.1966). Even where restitution is an appropriate condition of probation, the offender may not be institutionalized nor probation terminated solely because of inability to pay. * * * A similar standard is appropriately applicable in pretrial intervention termination proceedings. [Citations omitted.]

173 N.J.Super. at 194–95, 413 A.2d at 975–76.

The state under its inherent executive authority has broad discretion in determining whether or not it will enter into a preprosecution diversion agreement in a specific case. Once, however, the state enters into such an agreement, it may not revoke such agreement in violation of defendant's due process rights. *See Davis v. Municipal Court*, 46 Cal.3d 64, 757 P.2d 11, 249 Cal.Rptr. 300 (1988).

In the instant case, the trial court found that the prosecutor terminated the PDA based upon defendant's "failure to pay restitution"; and that defendant's failure to pay restitution was not "a wilful act * * * but was caused by his inability to pay restitution because of his financial situation." The court also found that defendant was an indigent as defined in the New Mexico Public Defender Act, and that although defendant had executed a promissory note in favor of the victim, as of the current date the original note cannot be found by the victim, and there is no evidence upon which the victim could civilly enforce its right to recover on the note against defendant.[1]

---

1. This finding is contradicted in part by defendant's admission contained in his requested finding of fact no. 16, conceding that the victim accepted a promissory note from him, dated July 14, 1986, agreeing to pay restitution. *See* NMSA 1978, § 37–1–3 (providing for six-year

The requested findings of fact and conclusions of law submitted by the state indicate that the state determined that there were no other options to termination of the agreement in order to secure full restitution to the victim. Similarly, the district court in this case found that there was no other way for defendant to pay full restitution to the victim without terminating the agreement and proceeding with prosecution. Under our statute, however, restitution is only required "to the extent practical." NMSA 1978, § 31–16A–5(B) (Repl. Pamp.1984). Further, "[i]t is the policy of this state that restitution be made by each violator of the Criminal Code of New Mexico to the victims of his criminal activities *to the extent that the defendant is reasonably able to do so.*" NMSA 1978, § 31–17–1(A) (Repl.Pamp.1987) (emphasis added).

When the state gives notice that it has terminated the PDA and the termination is challenged by defendant, the state must establish that the agreement was terminated due to defendant's non-compliance and that there is a reasonable basis for the termination.

Although the state may in its discretion terminate a PDA where defendant has failed to comply with a material provision of the agreement, nevertheless, where the sole ground for revocation is premised upon a defendant's failure to make restitution, and the district court determines that the defendant's inability to make full restitution was not due to a wilful failure on his or her part, the court's order upholding termination of the preprosecution agreement is contrary to law. *See State v. Devatt; see also State v. Hunt,* 83 Or.App. 684, 732 P.2d 956 (1987). The sole basis found by the trial court for the state's termination of the PDA was the defendant's non-wilful failure to make such payment in a timely manner.

Under the circumstances of this case, we conclude that revocation of the PDA was contrary to Section 31–16A–7, and that the court erred in approving termination of the agreement. Consequently, the order from which defendant appeals must be reversed, and the cause remanded with instructions that defendant be reinstated in the program.

Both the defendant and the state have raised an additional concern as to whether the period of preprosecution diversion may be tolled. The state argues that even if its action terminating the PDA is found to have been improper, the two-year period of limitations on preprosecution diversion agreements prescribed under Section 31–16A–7(A) should be deemed to have been tolled as of the date the state notified defendant of the diversion termination. We agree.

Thus, under Section 31–16A–7, the maximum period for extending the agreement was tolled following the state's notification by letter of its purported termination of the preprosecution agreement. Defendant participated in the program from the time that the agreement was signed on July 20, 1987, to the time that the agreement was terminated on January 22, 1988. The date for tolling the time period of the preprosecution diversion is the date that defendant was notified that the preprosecution agreement was terminated by the state.

The district court's order upholding termination of the PDA is reversed and the cause is remanded with directions to enter an amended order reinstating the agreement consistent with this opinion.

IT IS SO ORDERED.

MINZNER and ALARID, JJ., concur.

---

statute of limitations on promissory note). *See also Heisel v. York,* 46 N.M. 210, 125 P.2d 717 (1942); *Keil v. Wilson,* 47 N.M. 43, 133 P.2d 705 (1942) (recognizing right of recovery on lost promissory note).