795 P.2d 88

STATE of New Mexico,
Plaintiff–Appellee,

v.

Thom J. BOWIE, Defendant–Appellant.

No. 11664.

Court of Appeals of New Mexico.

June 14, 1990.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Edmund J. Lang, Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Defendant appeals his sentence to nine years incarceration for nine counts of attempt to evade or defeat gross receipts tax, NMSA 1978, § 7–1–72 (Repl.Pamp.1988), following a guilty plea. The sole issue is whether the district court erred in failing to grant defendant probation for reasons of indigency. Finding no error, we affirm.

*Facts*

The case arose out of attempts by defendant to publish and circulate a yellow page directory in Bernalillo County. The state charged defendant with twenty counts involving misappropriation of funds by means of fraudulent conduct, providing false information and evasion of taxes, passing forged checks, and writing checks on insufficient funds. On June 7, 1988, defendant entered into a plea and disposition agreement, in which he agreed to plead guilty to nine counts of attempt to evade gross receipts tax. In exchange, the state agreed to dismiss all remaining charges and not to bring habitual crime charges, if applicable. In addition, the state and defendant agreed that incarceration, if imposed, would not exceed nine years; sentencing would be postponed for a minimum of six months to enable defendant to fulfill restitution requirements; and restitution as determined by the court would include all indicted and unindicted charges relating to the yellow page directory business. Without making any recom-

mendation, the state made known through the plea agreement that a majority of the victims had expressed a preference for restitution as opposed to incarceration.

The district court accepted defendant's guilty pleas under the agreement, gave defendant six months to make restitution, continued bail, and scheduled a sentencing hearing for early January 1989. After two postponements, the sentencing hearing was held on May 12, 1989, eleven months after the plea agreement.

Defendant appeared for sentencing at the May 12, 1989 hearing. He advised the court that no money had been paid toward restitution. Defendant represented to the court that $1,700,000 would be available for restitution within ten days. The prosecutor recommended that defendant be incarcerated but suggested that he be given two weeks to surrender, so that his attorney would be in a position to seek to modify the sentence if the money came through. The district court sentenced defendant to nine years in prison and allowed him thirty days to surrender. Judgment and sentence were entered on June 23, 1989, and defendant was ordered to turn himself in at that time.

## Discussion

Defendant contends that he was not afforded due process because the trial court failed to inquire into the reasons for his failure to pay restitution. He claims that he was incarcerated simply because he lacked the funds to make restitution. We disagree.

*Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), established guidelines for use in proceedings for revocation of probation based upon a failure to pay a fine or restitution. The Supreme Court held that a trial court must first determine whether the probationer willfully refused to pay or failed to make a bona fide effort to secure the resources to make payment. In either of those situations, the court could revoke probation and impose a sentence of imprisonment. But if the probationer did make a bona fide effort, the court would then have to consider

whether alternatives to incarceration would be adequate to serve the state's interest before requiring imprisonment.

In *State v. Parsons,* 104 N.M. 123, 717 P.2d 99 (Ct.App.1986), this court considered whether the trial court erred in revoking probation because of a defendant's failure to pay a fine and costs of probation. As the state had offered proof of a breach of a material condition of probation, the defendant had the burden of coming forward with evidence to excuse noncompliance by showing indigency and that the failure was not willful. The defendant testified as to his monthly expenses, including food costs, utility bills, and medical bills. He stated that he had lost his job one and one-half months prior to the revocation hearing and that he had been looking for a job every day during that period. We remanded for findings on the issue of the defendant's bona fide efforts to pay the fine and costs imposed, and ordered that the trial court consider alternatives to incarceration if it found that the defendant had made such efforts.

*State v. Jimenez,* 110 N.M. 212, 794 P.2d 355 (Ct.App.1990) involved an appeal from a determination that the state had the right to terminate a defendant's participation in a preprosecution diversion program, based on a nonwillful failure to make full restitution to the victim. The preprosecution diversion agreement provided that the defendant make restitution payments and that prosecution be deferred for twenty-four months. We joined with other jurisdictions which had analogized termination from a preprosecution diversion program to probation or parole revocation proceedings. We agreed that such a defendant has a conditional liberty interest, is entitled to procedural due process protections, and that the diversion program may not be terminated contrary to the principle of substantive due process. In essence, we held that the guidelines established in *Bearden* were applicable to preprosecution diversion terminations.

At first glance, the decision to incarcerate this defendant, after his guilty plea and subsequent failure to make restitution, ap-

pears to fall between *Parsons* (probation revocation) and *Jimenez* (preprosecution diversion agreement termination) in terms of the nature of the individual liberty interest affected. Such a narrow view, we believe, places undue emphasis on the stage of the proceedings rather than the existence or quality of a determination as to requirements of the state's penological interests.

In *Bearden*, for example, the decision to place the defendant on probation reflected a determination by the sentencing court that the state's penological interests did not require incarceration. "[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.*, 461 U.S. at 667–68, 103 S.Ct. at 2070. Similarly, implicit in the exercise of a prosecutor's broad discretion to enter into a preprosecution diversion agreement is a decision by the state that its penological interests are best served by removing the defendant involved from the criminal justice system. *See* NMSA 1978, § 31–16A–2 (Repl.Pamp.1984) (one purpose of Preprosecution Diversion Act is to remove those persons from the criminal justice system who are most amenable to rehabilitation and least likely to commit future offenses).

The trial court, during its pronouncement of sentence at the May 12, 1989 hearing, stated that it would have been "perfectly willing to place [defendant] on probation, providing that he had reflected a bona fide effort to make restitution." Defendant attempts to elevate this comment at sentencing to a promise of probation in return for restitution.

We might be willing to construe this statement as a promise if it was part of the plea and disposition agreement itself, or if it had been made during the colloquy between the judge and defendant when the plea was accepted.[1] Under such circumstances, defendant might have reasonably expected that the court had promised probation in return for restitution. *Cf. State v. Rushing*, 103 N.M. 333, 706 P.2d 875 (Ct.App.1985) (an orally pronounced sentence is not a final judgment and is subject to change until reduced to writing).

We find nothing in the plea and disposition agreement, or in the transcript of proceedings at which the agreement was reviewed with defendant, which suggests that the district court determined that probation alone or in combination with restitution would adequately serve the public's interest in deterrence and punishment. Such a preliminary determination might not have well served the public's interest. Substantial restitution may be a potent penalty in the case of an affluent white-collar criminal, but to subject this defendant to a long-term restitution obligation might be counterproductive, as it could create too strong an incentive to seek an illegal source of funding. *See* III American Bar Association, *Standards for Criminal Justice* Standard 18–2.4, at 18–114 (2d ed. 1980). Furthermore, such a sentence in this case, absent substantial personal financial resources, would hold defendant in a perpetual state of economic servitude. *See id.*

It appears from our review of the record that defendant was granted presentence liberty based solely on his representations that he might be able to undo some of the harm done to his victims and thus perhaps influence the court and the state as to the suitability of punishing him with a term of incarceration. A sentencing judge must be permitted to consider any and all information that might reasonably bear on the proper sentence for the particular defendant, given the crime committed. *See Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

■ We note that defendant's victims had expressed a preference for restitution as opposed to incarceration. Therefore, they also had a stake in defendant's acqui-

---

1. The following exchange occurred between the district court and defendant during the June 7, 1988 hearing:

Q. Has anyone promised you that the Court would suspend or defer any part of that sentence?
A. No, sir.

sition of the resources to pay restitution during the presentencing period. However, in view of the absence of any determination at the plea and disposition stage that incarceration would not be required to serve the state's penological interests, we hold that the liberty interest granted defendant in the plea and disposition agreement is not as great as that interest conveyed in a preprosecution diversion agreement or granted through probation.

Nonetheless, assuming that defendant's liberty for the purpose of attempting to make restitution is a liberty interest within the protection of the fourteenth amendment, its termination calls for some process, however informal. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The question remains what process is due.

The plea and disposition agreement provided that sentencing be postponed for a minimum of six months. Under those terms, sentencing could have been held in December 1988 but was set for January 6, 1989. Defendant moved to reschedule sentencing to April 7, 1989, stating that he needed six more weeks to obtain funds for restitution. The trial court granted the motion and then apparently granted another continuance until May 12, 1989. The language of the agreement made clear that the court would review the progress of defendant towards making restitution before it imposed sentence.

A hearing was held on May 12, 1989, at which defendant stated that he had been "working for many months on a transaction with two different corporations, which involve a very large domestic trust, two very large banks, and a large securities firm." He also stated that $1,700,000 would be available for restitution within ten days of the sentencing hearing. Defendant did not state the conditions under which he would acquire the funds, nor did he explain how they would be repaid or earned. The trial court observed that no restitution had been made after several postponements of sentencing and that the court had been expecting a showing of a bona fide effort to make restitution by presentation of a substantial amount of money.

We hold that defendant was given an opportunity to explain what efforts he had made to acquire funds for restitution and that he failed to present evidence sufficient to excuse his inability to present any funds. *See State v. Parsons.* Not all situations calling for procedural safeguards call for the same kind of procedure. *Morrissey v. Brewer.* Defendant was provided with an opportunity to be heard at a meaningful time and in a meaningful manner. *See Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Under the circumstances of this case, we conclude that it was not error for the trial court to impose a sentence of incarceration pursuant to the plea and disposition agreement. *See Morrissey v. Brewer.*

Defendant argues that the trial court could not have evaluated his efforts to make restitution because no conditions of restitution or any amount to be paid had been established. This contention applies to conditions of sentencing, *see* NMSA 1978, § 31–17–1(B) (Cum.Supp.1989), while the agreement to make restitution was not part of the sentence. Furthermore, in view of defendant's failure to make *any* restitution, he was not prejudiced by the failure to specify conditions and the amount of restitution.

We affirm.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.