810 P.2d 801

**STATE of New Mexico, Petitioner,**

v.

**Gilbert JIMENEZ, Respondent.**

No. 18992.

Supreme Court of New Mexico.

April 30, 1991.

Tom Udall, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for petitioner.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for respondent.

OPINION

MONTGOMERY, Justice.

In its opinion below,[1] the court of appeals held that a preprosecution diversion agreement (PDA) between the state and an accused may not be terminated by the state on the sole ground that the accused is unable to make restitution as provided in the agreement. The state petitioned this Court for a writ of certiorari, contending that the court of appeals' decision contravened the United States Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), and will frustrate the objectives of the Preprosecution Diversion Act[2] by inhibiting prosecutors from entering into these agreements where the defendant's ability to make restitution is in doubt. We granted the writ and now reverse. We agree that the court of appeals went too far in holding, or at least strongly implying, that a PDA can *never* be terminated because of the defendant's nonwilful inability to pay and in remanding with instructions that the district court reinstate defendant into the preprosecution diversion program. Under the principles established in *Bearden,* the state may terminate a diversion agreement, even if the sole ground is the defendant's nonwilful failure to make restitution, but only if there are no adequate alternatives to termination which will meet the state's legitimate penological interests. Accordingly, we remand to the district court for consideration of any alternatives to *termination* (not incarceration) and for determination of the adequacy of any such alternatives in meeting the state's penal objectives.

I.

Defendant was alleged to have embezzled approximately $3,000 from a little league baseball organization. After investigation, the district attorney agreed that defendant was an appropriate candidate for acceptance into a preprosecution diversion program. This program enables a district attorney to suspend charges against an eligible defendant on the condition that he or she make restitution or participate in a program of rehabilitation when the district attorney believes that rehabilitation and conservation of criminal justice resources are appropriate. If the defendant successfully completes the program, the charges are dismissed; if the diversion agreement is materially breached, the state may resume prosecution. *See generally* Preprosecution Diversion Act, *supra* note 2.

Pursuant to this program, defendant and the district attorney entered into an agreement which required defendant, among other things, to make full restitution to the little league in the amount of $2,853.98. This amount was to be paid in monthly installments of $200 over fourteen months commencing July 1987, with a final payment of $53.98 in the fifteenth month. Under the agreement, defendant's prosecution was to be deferred for a period of two years, after which the state would be barred from prosecuting him on the embezzlement charge if he successfully completed the agreement. Another provision permitted the district attorney to revoke the agreement if defendant failed to comply with its terms and conditions.

Defendant made the first two payments of $200 for July and August 1987, but made none for September or October. The following month, the director of preprosecution diversion met with defendant and his attorney about the lack of payments. The director agreed not to terminate the agreement upon defendant's promise to make a payment of $250 on December 14, 1987, and to continue making payments thereafter. Defendant failed to make the December payment on time, but gave assurances that the payment would be made soon. He paid $100 on December 22 but failed to make any subsequent payments. The district attorney notified defendant by letter on January 21, 1988, that the PDA was terminated for his failure to pay restitution in violation of the agreement. De-

**1.** *State v. Jimenez,* 110 N.M. 212, 794 P.2d 355 (Ct.App.1990).

**2.** NMSA 1978, §§ 31–16A–1 to –8 (Repl.Pamp. 1984).

fendant then petitioned the district court for a hearing to review the termination.[3]

The parties agreed, and the court explicitly found, that defendant's failure to pay restitution was not deliberate or wilful, but rather "was caused by his inability to pay restitution because of his financial situation." During the period between execution of the agreement and its termination, defendant was employed only intermittently. At the time he made the agreement he was working in Arizona, but the job ended in August 1987. His two full payments were made during this period of employment. Thereafter, he worked for a supermarket in Silver City, but was laid off after a month when the supermarket discontinued the job. He subsequently had only part-time employment, working an average of two days per week as a substitute teacher for $25 per day. His wife was unemployed. In 1987, he and his family, which included five minor children, received food stamps equaling $420–450 per month, and he reported an income of $9,535 for that year.

The court determined that defendant would be unable to pay full restitution by July 7, 1989—the end of the twenty-four month agreement—which was just over five months away by the time of the court's decision. The court also found that it was impossible to extend the agreement to allow additional time for payment, since under the statute diversion agreements may not exceed two years. NMSA 1978, § 31–16A–7(A). The only way to allow defendant additional time in which to make full restitution, the court found, was to terminate the diversion agreement and provide for additional time by way of probation if he was convicted.

The court recognized its obligation to follow the principles of *Bearden*, but concluded that termination would not violate defendant's constitutional rights because there were several alternatives to *imprisonment* after a conviction, including deferred or suspended sentences with probation, which could provide sufficient time for full restitution of the victim. The court therefore upheld the district attorney's termination of the agreement.

The court of appeals reversed. Relying on *Bearden* and several cases from other jurisdictions applying its principles in the context of pretrial diversion termination, the court of appeals held:

> [W]here the sole ground for revocation is premised upon a defendant's failure to make restitution, and the district court determines that the defendant's inability to make full restitution was not due to a wilful failure on his or her part, the court's order upholding termination of the preprosecution agreement is contrary to law.

*Jimenez*, 110 N.M. at 217, 794 P.2d at 360.[4] Since the sole basis found by the trial court for the state's termination of the PDA was defendant's nonwilful failure to pay restitution, the court of appeals ordered the agreement reinstated.

## II.

In *Bearden*, the Supreme Court recognized that the decision to terminate a de-

---

**3.** Under *State v. Trammel,* 100 N.M. 543, 673 P.2d 827 (Ct.App.1983), the district attorney's decision to terminate a diversion agreement is reviewable by the district court. *Trammel* requires the court to hold an evidentiary hearing to determine whether a defendant has failed to comply with the agreement, and whether the prosecutor acted fairly and within his statutory authority in terminating the agreement when the defendant asserts that the prosecutor breached the agreement or violated his statutory authority.

**4.** The court of appeals relied heavily on the following language from *State v. Devatt,* 173 N.J.Super. 188, 194–95, 413 A.2d 973, 975–76 (1980):

> "[T]he mere failure to make full restitution within the prescribed time period may not in itself support the conclusion that defendants have failed or refused to cooperate in such a wilful and knowing manner as to have forfeited their right to further participation....
>
> "... Even where restitution is an appropriate condition of probation, the offender may not be institutionalized nor probation terminated solely because of inability to pay. A similar standard is appropriately applicable in pretrial intervention termination proceedings. [Citations omitted.]"

*Jimenez,* 110 N.M. at 216, 794 P.2d at 359.

fendant's probation for a nonwilful failure to pay a fine or restitution involves a delicate balance between a defendant's fourteenth amendment rights and the state's legitimate penal interests. The Court determined that when the trial court finds the sole reason for termination to be the probationer's failure to pay a fine or restitution despite having made sufficient bona fide efforts to secure the resources to pay, the state may revoke probation, but only if the court determines that alternatives to imprisonment are inadequate to meet the state's legitimate penal interests. 461 U.S. at 672, 103 S.Ct. at 2072. The Court reasoned that in the case of a defendant who has demonstrated a willingness to pay his debt to society and, by complying with other conditions of probation, an ability to conform his or her conduct to social norms, the state's interests in punishment and deterrence often can be adequately served by imposing alternatives to full and timely payment. *Id.* at 670, 672, 103 S.Ct. at 2071, 2072.

Courts have held that the principles applicable to review of decisions to revoke parole or probation apply also to review of a defendant's termination from a preprosecution diversion program. *See State v. Devatt, supra* note 4; *Commonwealth v. Melnyk,* 378 Pa.Super. 42, 548 A.2d 266 (1988); *State v. Marino,* 100 Wash.2d 719, 674 P.2d 171 (1984) (en banc).

▮ Both the district court and the court of appeals believed these principles to be applicable in this case, and we agree.[5] Both defendants granted probation and those accepted into preprosecution diversion programs have a "conditional liberty" interest—freedom from imprisonment or freedom from prosecution and the possibility of a criminal record and imprisonment—which may not be revoked in violation of the procedural and substantive require-

ments of due process. *See Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985). Similarly, the different treatment of individuals in the criminal justice system based on ability to pay restitution as a condition of either probation or preprosecution diversion invokes the same concerns for a defendant's right to equal protection. *See Bearden,* 461 U.S. at 664, 103 S.Ct. at 2068.

▮ We therefore agree with the courts below that the principles of due process and equal protection considered in *Bearden* apply to the termination of preprosecution diversion, but we disagree over how those principles were applied in this case. The court of appeals' holding indicates that the state may never terminate a diversion agreement if the defendant's failure to pay is due solely to indigency. Such a result is plainly contrary to *Bearden,* which permits termination for a nonwilful failure to pay so long as the court has first determined that there are no adequate alternatives which meet the state's interests.

▮ We believe *Bearden* struck the proper balance between the rights of indigent defendants and the interests of the state. We hold, therefore, that in proceedings to terminate a preprosecution diversion agreement for failure to pay restitution, the court reviewing the termination must first inquire into the reasons for the failure to pay. Of course, if the defendant has wilfully refused to pay or has failed to make sufficient bona fide efforts legally to acquire the resources to pay, the state may revoke the agreement and begin prosecution of the alleged crime or crimes. If, however, the court determines that the defendant has not been at fault in failing to make restitution, then the court must consider whether there are alternatives to ter-

---

5. And so does the state. The state does not contest the applicability of *Bearden,* contending only that the district court properly complied with it by considering the adequacy of alternatives. As developed later in this opinion, we disagree with the state on this point; the district court considered alternatives to *imprisonment* but not alternatives to *termination* of the agreement.

Since its decision in this case, the court of appeals (by a different panel) has clarified its holding below: "In essence, we held [in *Jimenez*] that the guidelines established in *Bearden* were applicable to preprosecution diversion terminations." *State v. Bowie,* 110 N.M. 283, 284, 795 P.2d 88, 89 (Ct.App.1990).

mination which will meet the state's legitimate penal interests. Only if the court determines that alternative measures are not adequate to meet the state's interests may the court uphold termination of a diversion agreement when the defendant has made sufficient bona fide efforts to pay.

We are convinced, moreover, that our decision reflects sound public policy. The decision of the court of appeals, prohibiting termination of a diversion agreement for nonpayment of restitution where the defendant is indigent, could well have a chilling effect on prosecutors' use of these agreements. If district attorneys are not allowed to terminate PDA's with defendants who are unable to make restitution, they might be reluctant to place on diversion defendants who cannot demonstrate an ability to pay. This would severely impair the efficacy of diversion programs and would frustrate the laudable goals which such programs serve. Those goals include: keeping individuals out of the criminal justice system who are most amenable to rehabilitation, providing services designed to assist such individuals to avoid future criminal activity, securing restitution to victims of crime, and conserving community and criminal justice resources. *See* NMSA 1978, § 31–16A–2.

### III.

The sole ground for termination in this case was defendant's failure to pay restitution in a timely manner, and there is no dispute that defendant was not at fault for his failure to pay. It is apparent from the record, however, that the district court did not adequately consider alternatives to termination from the program.

Initially, we emphasize an important distinction between the alternatives which, under *Bearden,* must be considered in the probation revocation context and those to be considered in the context of diversion termination. *Bearden* requires the sentencing court to consider, before revoking probation for a nonwilful failure to pay a fine or restitution, whether alternatives to *imprisonment* are adequate to serve the relevant state interests in punishment and

deterrence. 461 U.S. at 672, 103 S.Ct. at 2072. The trial court applied this rule directly to this case, holding that termination was proper because there were "several alternatives to imprisonment for Jimenez upon the termination of the Preprosecution Agreement," such as making restitution under various types of probation arrangements in the event of conviction following prosecution.

But different considerations apply to termination of a preprosecution diversion agreement. As indicated earlier in this opinion, a defendant accepted into a diversion program has a protected liberty interest in remaining free from prosecution. This interest is distinct from the interest in freedom from imprisonment upon revocation of probation. It is the former interest that is entitled to constitutional protection in a diversion termination case. The relevant alternatives in such a case, therefore, are not alternatives to imprisonment but alternatives to termination from diversion and consequent prosecution.

Additionally, the relevant state interests, which must be of sufficient importance to justify infringing upon a defendant's conditional liberty, are different. The inquiries into alternatives which would satisfy those interests are therefore also different in both contexts. As the Court said in *Bearden,* the decision to place a defendant on probation "reflects a determination by the sentencing court that the State's penological interests do not require imprisonment." 461 U.S. at 670, 103 S.Ct. at 2071. The decision to place a defendant on diversion, however, reflects a determination by the district attorney that "the State's penological interest does not require *prosecution of the charges* against him or her if the defendant successfully completes the reasonable conditions of the [diversion] program." *Melnyk,* 378 Pa.Super. at 51, 548 A.2d at 270 (emphasis added). *See also* NMSA 1978, § 31–16A–2 (one purpose of diversion act is to remove those persons from the criminal justice system who are most amenable to rehabilitation); *State v. Bowie,* 110 N.M. at 285, 795 P.2d at 90 (implicit in decision to divert is state's determination

that its penological interests are best served by removing defendant from the criminal justice system).

■ Just as the state's interests in placing a defendant on probation may be adequately served by finding alternatives to *imprisonment* when an indigent defendant is unable to pay a fine or restitution, so may the state's interests in diverting a defendant be adequately served by pursuing alternatives to *prosecution* when the defendant similarly is unable to pay in compliance with a PDA. The proper alternatives to consider in both contexts are therefore *pretermination* alternatives which would allow an indigent defendant to comply with the probation or diversion program which the state has already determined meets its penal interests in a particular case.

■ Thus, alternatives such as reducing the amount of restitution, extending the time for payments, or directing the defendant to perform public service or specified work for the victim in complete or partial substitution for cash payment may sometimes adequately serve the state's interests in carrying out an effective diversion program. *See Bearden*, 461 U.S. at 672, 103 S.Ct. at 2072. Of course, other reasonable alternatives may apply in the circumstances of a particular case, and the court should examine not simply whether any single alternative is adequate but whether appropriate alternatives, taken together, will adequately satisfy the state's interests.

In connection with the option of extending time for payment, we note that the trial court in this case believed the diversion period continued to run during the pendency of defendant's challenge to the district attorney's termination. We believe the court of appeals was correct in holding, however, that in a diversion termination case the diversion period should be tolled as of the date the state notifies the defendant of the termination. *Jimenez*, 110 N.M. at 217, 794 P.2d at 360.[6] Here, the diversion period had approximately eigh-

teen months to run after the state gave notice of termination, and defendant had made payments totaling $500. The alternative of permitting him to complete restitutionary payments during the remaining time period, perhaps coupled with the possibility of reduced restitution and/or performance of substitute services in kind, merited consideration as potentially satisfying the state's penal objectives.

With respect to the alternative of reducing the amount of restitution, we note, as did the court of appeals, that the Act itself countenances tailoring the amount of restitution to the resources of a defendant. Under the statute, restitution is only required "to the extent practical." Section 31–16A–5(B). Moreover, our legislature has recognized that victim restitution may be limited by what a defendant can reasonably afford to pay. NMSA 1978, § 31–17–1(A) (Repl. Pamp.1990).

■ We recognize that reducing the amount or extending the time of payment on account of the limited resources of a particular defendant may not always be adequate to meet the state's interests. Under our decision today, the court therefore should also consider whether partial restitution or other alternative measures are adequate to achieve the goals of diversion once the issue has been raised by the state. The relevant penological interests of the state may include the goals of rehabilitation, punishment (*i.e.*, retribution), deterrence, and securing meaningful restitution to the victims of crime. As to the last of these, the victim of a particular crime might well be satisfied with less than full restitution, particularly if partial restitution is accompanied by some sort of services in kind or public service restitution. *See* § 31–16A–5 (public service restitution may be required in addition to monetary restitution).

For the reasons set out above, the decision of the court of appeals is vacated. The order of the district court is reversed

6. Although we vacate the court of appeals' opinion in our disposition of this case, its holding on this issue is hereby incorporated into this opin-

ion. We note that the state agreed with this holding.

and the cause is remanded for a new hearing on defendant's petition for review of the district attorney's notice of termination.

IT IS SO ORDERED.

SOSA, C.J., and FRANCHINI, J., concur.