548 A.2d 266

COMMONWEALTH of Pennsylvania

v.

Barbara J. MELNYK, Appellant.

Superior Court of Pennsylvania.

Argued June 7, 1988.

Filed Sept. 12, 1988.

Rosemary Dann, Assistant Public Defender, Wallingford, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Newtown Square, for Com., appellee.

Before McEWEN, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

Barbara Jane Melnyk appeals from the Judgment of Sentence imposed following a conviction on two counts of welfare fraud.

From September, 1980 to October, 1984, Melnyk was gainfully employed while receiving public assistance. Because she failed to report the earned income, she wrongfully obtained a total of $10,789.00 ($9,967.00 for public assistance and $822.00 for food stamps). Through her attorney, Melnyk requested placement on the accelerated rehabilitative disposition (hereinafter "ARD"). An ARD hearing was scheduled for April 16, 1986 at which time appellant appeared. For some unexplained reason, the hearing was not conducted. She again appeared on April 21, 1986 for a scheduled "back up trial date". At that time, appellant requested a continuance for the scheduling of an ARD hearing.[1] At the April 21st hearing, appellant agreed to waive her Rule 1100 rights for any period of time involved in ARD proceedings, she asserted that she was willing and able to pay court costs for ARD, and that she was willing to make a good faith effort to pay restitution in the amount of $10,789.00. The ARD Division of the District Attorney's Office of Delaware County indicated that if Melnyk could demonstrate a present ability to pay restitution in the amount of $10,789.00 within the ARD period, she would be otherwise eligible for inclusion in the ARD program. Because Melnyk lacked the ability to pay restitution, the district attorney's office refused to recommend her as an appropriate ARD candidate. After reviewing her income and assets, the court, being satisfied that appellant lacked the present ability to pay restitution, denied her application for continuance and set the cause for trial. In a non-jury trial, she was found guilty of welfare fraud and sentenced to two years probation and ordered to pay restitution in the amount of $10,789.00. This appeal followed.

---

1. While the record contains no transcript of the April 21st hearing, the parties later entered a Stipulation and Supplemental Stipulation of Facts into the record. Many of the facts set forth herein are gleaned from those stipulations.

On appeal, Melnyk contends that the lower court and district attorney's office committed error of constitutional dimension. She argues that denying inclusion in the ARD program solely on the basis of an applicant's indigency violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. U.S. Const., art xiv. Appellant also contends that the district attorney's office exceeded its authority granted by the Pennsylvania Rules of Criminal Procedure governing ARD treatment. *See* Pa.R.Crim.P., Rules 175–185, 42 Pa.C. S.A. Finally, appellant contends that the lower court abused its discretion in the sentence imposed.[2]

## I.

The ARD program provides a pretrial disposition of certain cases in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the terms of which are to be determined by the court and applicable statutes. *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985). The program is governed by Rules 175 to 185, *supra.* Under the rules and relevant caselaw, the district attorney has the sole discretion to submit or refuse to submit a case for ARD. *Id.; Commonwealth v. Kiehl*, 353 Pa.Super. 353, 509 A.2d 1313 (1986). In *Lutz*, the district attorney's discretion was circumscribed as follows:

> ... the decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt unrelated to the protection of society and or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on this view

**2.** Because of our disposition based on appellant's first claim, we need not address the second and third claims.

of what is most beneficial for society and the offender. *Compare Shade v. Commonwealth of Pennsylvania Department of Transportation*, 394 F.Supp. 1237, 1242 (M.D.Pa.1975), citing *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

508 Pa. at 310, 495 A.2d at 935.

■ The district attorney's discretion in ARD placement is also circumscribed by the rules of criminal procedure. In *Shade v. Commonwealth of Pennsylvania, Department of Transportation, supra,* the District Court stated:

The conditions of the ARD program may be the same as may be imposed with respect to probation after conviction of a crime, including restitution and costs, and any other conditions agreed to by the parties, except that a fine may not be imposed and the period of the ARD program cannot exceed two years.

394 F.Supp. at 1240 (referring to Rule 182, *supra*). The Sentencing Code, 42 Pa.C.S.A. §§ 9701–9781, provides guidelines for the imposition of probation as an alternative to incarceration. It grants the court wide discretion to attach reasonable conditions as terms of probation. However, the court may only order restitution "in an amount [defendant] can afford to pay". *Id.* § 9754(c). It is incumbent upon the court to determine the defendant's ability to make restitution and to order restitution which serves the dual purpose of achieving rehabilitation of the defendant as well as providing the complainant with some measure of redress. *Commonwealth v. Erb*, 286 Pa.Super. 65, 428 A.2d 574 (1981). *See also Commonwealth v. Fuqua*, 267 Pa.Super. 504, 508, 407 A.2d 24, 26 (1979) ("a court's concern that the victim be fully compensated should not overshadow its primary duty to promote the rehabilitation of the defendant").

■ Thus, while the district attorney has sole discretion to move for a defendant's admission into ARD, the prosecutor may not summarily reject a person from consideration for improper reasons. In the case *sub judice*, the district attorney admitted that, but for appellant's inability to make

restitution within a two-year ARD period, she was fully suitable for ARD placement.

## II.

Melnyk contends that the district attorney's office has made an impermissible distinction between two classes of individuals who are otherwise equally acceptable for ARD disposition: those who have the present ability to pay restitution in full within two years and those who, because of indigency and in spite of the willingness to make bona fide efforts to pay, do not have that same ability. She asserts that this impermissible distinction violates her constitutionally protected rights to equal protection and due process.

When reviewing a constitutional claim provided in the United States Constitution, we seek guidance from opinions emanating from the United States Supreme Court. While we have found no case which addresses the consideration of indigency in a pretrial disposition proceeding, there are numerous cases which have given extensive consideration to the rights of indigent persons in the criminal justice system. Several cases involve an indigent defendant's right to appeal. While affirming the principle that a state is under no obligation to provide any criminal defendant with an appeal, *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), the Supreme Court has consistently held that if the state does provide such a procedure as a matter of right, it must be available to all defendants, regardless of financial ability.

In *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court struck down an Illinois rule which allowed a convicted criminal defendant to present claims of trial error to the appellate court only if accompanied by a transcript of the testimony adduced at trial. The rule allowed no exception for indigent defendants, regardless of their financial ability to obtain such transcript. The Court in *Griffin* held that this discrimination violated the Fourteenth Amendment. Succeeding cases invalidated sim-

ilar financial barriers to the appellate process. In *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), the Court struck down an Indiana provision declaring that only a public defender can obtain a free transcript of a hearing on a *coram nobis* application. If the public defender declined to request one, the indigent prisoner seeking to appeal had no recourse. In *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), the Court struck down a state rule that permitted an indigent to obtain a free transcript of the trial only if he satisfied the trial judge that his contentions on appeal would not be frivolous. The appealing defendant was in effect bound by the trial court's conclusions in seeking to review the determination of frivolousness, since no transcript or its equivalent was made available to him. In *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), and *Burns v. Ohio*, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959), the Court determined that state-imposed financial barriers to the adjudication of a criminal defendant's appeal was violative of the Fourteenth Amendment.

Subsequently, the Supreme Court addressed the constitutionality of requiring a criminal defendant to undergo imprisonment solely because of his or her indigency. The Court again concluded that this constituted invidious discrimination in violation of the equal protection and due process clauses of the Fourteenth Amendment. In *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court determined that imprisonment of an indigent solely because he was too poor to pay fines imposed by a state court for traffic offenses which were punishable by fines only, constituted intolerable discrimination in violation of the equal protection clause of the Fourteenth Amendment. Following its holding in *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the *Tate* court reasoned, "[T]he Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." 401 U.S. at 398–99, 91 S.Ct. at 671, 29 L.Ed.2d at 133. *See also*

*Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (state court erred in revoking parole for failure to pay restitution without first determining probationer's ability to pay); *Commonwealth ex rel. Benedict v. Cliff,* 451 Pa. 427, 304 A.2d 158 (1973) (reversed judgment of sentence which required incarceration for failure to immediately comply with imposition of fine); *Commonwealth v. Jones,* 447 Pa. 228, 286 A.2d 892 (1971) (holding that same standard for review of waiver of constitutional right must be applied whether defendant represented by private or court-appointed counsel);

As was recognized in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974),

"Due process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.

417 U.S. at 608–09, 94 S.Ct. at 2437, 41 L.Ed.2d at 350.

In *Bearden, supra,* the Court recognized that due process and equal protection principles converge in the Court's analysis in these types of cases, 461 U.S. at 665, 103 S.Ct. at 2068, 76 L.Ed.2d at 228, and that each analysis has been used in different cases.[3] The *Bearden* court proceeded to disposition by way of a due process analysis and stated that,

Whether analyzed in terms of equal protection or due process,[8] the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose...." *Williams v. Illinois,* supra [399 U.S. 235], at

3. See discussion in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

260, 26 L.Ed.2d 586, 90 S.Ct. 2018 [2031], 52 Ohio Ops.2d 281 (Harlan, J., concurring).

[8] A due process approach has the advantage in this context of directly confronting the intertwined question of the role that a defendant's financial background can play in determining an appropriate sentence. When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished." *North Carolina v. Pearce,* 395 U.S. 711, 723, 23 L.Ed.2d 656, 89 S.Ct. 2072 [2079] (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.

461 U.S. at 666–67, 103 S.Ct. at 2069, 76 L.Ed.2d at 229. Following the Supreme Court's lead, we will apply a due process analysis in deciding the case before us.

In response to appellant's due process claim, the Commonwealth argues that admission into ARD is a privilege and not a fundamental right. Therefore, as long as the reason behind requiring one to to have the ability to pay restitution is not arbitrary, the requirement should be upheld. The Commonwealth asserts that the purpose of restitution is to impress upon the offender the loss that offender has caused[4] and, therefore, the requirement that an ARD applicant show a present ability to pay full restitution is not arbitrary and capricious.

■ For a due process analysis to be applied, the defendant need not prove that she was denied a fundamental right.

4. In *Commonwealth v. Fuqua,* 267 Pa.Super. 504, 407 A.2d 24 (1979), this Court explained the need for reasonable restitution,

Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. However, conditioning probation on the satisfaction of requirements which are beyond the probationer's control undermines the probationer's sense of responsibility. *Huggett v. State,* 83 Wis.2d 790, 798, 266 N.W.2d 403, 407 (1978). 267 Pa.Super. at 509, 407 A.2d at 26.

This is apparent from earlier cases cited in which the court recognized that an appeal is not a fundamental right but once granted as a matter of right, a State cannot arbitrarily cut off the appeal rights of indigents while leaving open avenues of appeal for more affluent persons. Similarly, the statutory ceiling placed on imprisonment for any substantive offense must be the same for all defendants regardless of their economic status, *Tate v. Short, supra,* and the terms of probation must be applied to all defendants alike. *Bearden v. Georgia, supra.* Likewise, the ARD program is a discretionary program, available only to those defendants who show a propensity to be rehabilitated without final adjudication of the charges against them. The considerations involved in placing a convicted defendant on probation are similar to the considerations involved in placing a defendant in the ARD program. That is, the decision to place the defendant on probation reflects a determination by the sentencing court that the State's penal interests do not require imprisonment. Likewise, the district attorney's decision that a defendant is appropriate for ARD placement indicates that the State's penological interest does not require prosecution of the charges against him or her if the defendant successfully completes the reasonable conditions of the ARD program.

■ Reviewing a State's decision from a due process perspective requires more than a mere determination that the state was not "arbitrary", as the Commonwealth suggests. Due process encompasses elements of equality and provides the court with a vehicle for enforcing the constitutional principle that all criminal defendants are treated with "fundamental fairness", the touchstone of due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973). Thus, while the State may impose the same condition upon all potential ARD candidates in a nonarbitrary manner, the dictates of due process may, nonetheless, be offended.

The Supreme Court's ruling in *Bearden v. Georgia, supra,* is most apposite to our case. Relying on *Williams* and

*Tate,* the Supreme Court determined that a state court erred in revoking the probation of a defendant on the basis that the defendant had failed to pay a fine and the restitution upon which his probation had been conditioned, without first determining that the probationer had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist. The court reasoned, "[I]f the state determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." 461 U.S. at 667, 103 S.Ct. at 2070, 76 L.Ed.2d at 229. The court clearly distinguished this substantive limitation on the imprisonment of indigents from the situation where a defendant was at fault in failing to pay a fine.

The distinction, based on the reasons for nonpayment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether alternative methods of punishing the defendant are available. This lack of fault provides a substantial reason which justifies or mitigates the violation and makes revocation inappropriate.

461 U.S. at 668–69, 103 S.Ct. at 2070, 76 L.Ed.2d at 230. (citations and footnotes omitted)

The state merely argues that the purpose of restitution is to impress upon appellant the loss that she has caused. While this is an appropriate State interest in rehabilitating appellant, protecting society, punishing the lawbreaker and deterring others form similar criminal behavior, we must determine whether these interests can be served by alternative means. Once again, we find guidance in *Bearden.*

> The State is not powerless to enforce judgment against those financially unable to pay a fine. For example, the sentencing court could extend the time for making payments [not an option in our case], or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine. Justice Harlan appropriately observed ... "the deterrent effect of a fine is apt to derive more from its pinch on the purse than the time of payment." Indeed ... a sentencing court can often establish a reduced fine or alternative public service in lieu of a fine that adequately serves the State's goals of punishment and deterrence, given the defendant's diminished financial resources. Only if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a probationer who has made sufficient bona fide efforts to pay.

461 U.S. at 672, 103 S.Ct. at 2072, 76 L.Ed.2d at 232 (citations and footnotes omitted).[5]

 Following the reasoning set forth, we hold that in ARD determinations, the district attorney and the court must inquire into the reasons for the petitioner's inability to pay restitution. If the petitioner shows a willingness to make a bona fide effort to pay whole or partial restitution, the State may not deny entrance to the ARD program. If

---

5. In *Commonwealth v. Wertz,* 297 Pa.Super. 319, 443 A.2d 856 (1982), in a per curiam opinion, this Court remanded a case for sentencing with instructions that the lower court consider any evidence presented regarding the defendant's indigency in determining whether he should be permitted to pay the fine and costs in installments. Further, we ordered the lower court to consider any sentencing alternatives.

the petitioner has no ability to make restitution despite sufficient bona fide efforts to do so, the State must consider alternative conditions for admittance to and completion of the ARD program. To do otherwise would deprive the petitioner her interest in repaying her debt to society without receiving a criminal record simply because, through no fault of her own, she could not pay restitution. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

Returning to the fact of this case, the Commonwealth concedes that but for her inability to make full restitution within the two year ARD period, appellant would be considered for the ARD program. Appellant asserts that she was willing and able to pay court costs and that she was willing to make a good faith effort to pay restitution. Based on this scenario, we conclude that the State's refusal to place appellant in the ARD program was fundamentally unfair and invidiously discriminated against appellant because of her economic status.[6] Accordingly, appellant's conviction and judgment of sentence are vacated. Case remanded to the trial court (with directions that appellant be admitted to the ARD program subject to such conditions as are not inconsistent with this Opinion). Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent from the holding of my very distinguished colleagues on the basis of the fundamental principles of accelerated rehabilitative disposition enunciated by our Supreme Court in *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985).

---

**6.** Accord: *Commonwealth v. Church*, 513 Pa. 534, 522 A.2d 30 (1987) (reversed lower court's reduction of statutorily mandated fine when hardship, not inability to pay, was argued); *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977) (reversed civil contempt conviction for failure to make court-ordered support payments where evidence insufficient to conclude contemptnor had present ability to comply); *Commonwealth ex rel. Brown v. Hendrick*, 220 Pa.Super. 225, 283 A.2d 722 (1971) (same).

Accordingly, I would affirm the conviction and judgment of sentence.