594 A.2d 703

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Blair R. HYDE, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1991.

Filed July 25, 1991.

James B. Yelovich, Somerset, for appellant.

Donley C. Logue, Jr., Dist. Atty., Bedford, for Com., appellee.

Before TAMILIA, POPOVICH and MONTGOMERY, JJ.

OPINION PER CURIAM:

Appellant, Blair R. Hyde, was convicted by a jury of driving with a blood alcohol level of .10 percent or greater. Posttrial motions were denied and appellant was sentenced

to forty-eight hours to eighteen months imprisonment. This direct appeal followed. We affirm.

Appellant asserts three issues for our review: (1) whether the district attorney abused its discretion by not approving appellant for the Accelerated Rehabilitation Disposition program; (2) whether the evidence was insufficient; and (3) whether the prosecutor engaged in misconduct.

■ Appellant first claims that the district attorney abused its discretion by not approving appellant for the ARD program. It is within the district attorney's discretion which defendants qualify for an ARD program. A defendant's admission into an ARD program is not a matter of right but rather a privilege. *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985). The areas of concern, when implementing criteria for an ARD program, are the protection of society and whether the defendant is the type of person who can benefit from ARD. *Commonwealth v. Lutz, supra; Commonwealth v. Stranges*, 397 Pa.Super. 59, 579 A.2d 930 (1990).

■ The emphasis in Bedford County appears to be on the protection of society. The district attorney determined that anyone with a blood alcohol level in excess of .230% may not qualify for ARD. This criteria does not amount to an abuse of discretion. *Commonwealth v. Knowles*, 373 Pa.Super. 203, 540 A.2d 938 (1988) (A cut off point of .250% was not an abuse of discretion and serves the purpose of ARD). Appellant's blood alcohol level was .245%, and thus the district attorney did not abuse his discretion by not admitting appellant into the ARD program.

■ Appellant's next two claims are that the evidence was insufficient because the Commonwealth failed to relate the results of the blood alcohol test back to the time appellant was operating his vehicle and that the prosecutor engaged in misconduct and went beyond the bounds of propriety in his closing argument. Appellant has the responsibility of providing a complete and comprehensive record to the reviewing court. *Commonwealth v. Feflie*,

398 Pa.Super. 622, 581 A.2d 636 (1990); *Commonwealth v. Williams,* 357 Pa.Super. 462, 516 A.2d 352 (1986); Pa. R.App.P. 1911.

In the instant case, appellant has failed to provide this court with a complete trial transcript, and thus the trial record is inadequate. The record reveals that appellant only ordered isolated excerpts from the trial. Therefore, we are unable to meaningfully review appellant's claims. Absent an adequate record, there is no support for appellant's arguments that the evidence was insufficient or that the prosecutor's remarks were prejudicial and not a fair commentary on the evidence presented. *Commonwealth v. Williams, supra.*

Judgment of sentence affirmed.

POPOVICH, J., files a concurring opinion.

POPOVICH, Judge, concurring:

I join the majority because its statement of the law is correct. However, I write separately to express my views regarding the arbitrary nature through which one may be accepted into the ARD program. In so doing, I re-visit *Commonwealth v. Kindness,* 247 Pa.Super. 99, 371 A.2d 1346 (1977), especially that portion of the opinion which held that the decision of a prosecutor to exclude individuals from ARD in one county, but not in another, did not result in a denial of equal protection. *Id.,* 247 Pa.Superior Ct. at 107–10, 371 A.2d at 1350–51.

In *Commonwealth v. Kindness,* 247 Pa.Super. 99, 371 A.2d 1346 (1977), the appellant, Charles Kindness, raised a Fourteenth Amendment claim, asserting that the district attorney's refusal to admit his case into the ARD program denied him equal protection under the law. He argued that the policy, which disallowed the admission of all drunk drivers into ARD, discriminated among intoxicated persons. *Id.,* 247 Pa.Superior Ct. at 107–08, 371 A.2d at 1350. Following discussion, this Court upheld the policy of the Dauphin County district attorney's office. This Court found

that the Dauphin County practice was not violative of the Equal Protection Clause because (a) the law, as administered, dealt alike with all members of that class and (b) the classification was reasonable. *Id.*, 247 Pa.Superior Ct. at 107–08, 371 A.2d at 1350.

The second facet of Kindness' argument was that "exclusion of drunken drivers from ARD in Dauphin County, but not in other counties, result[ed] in a denial of equal protection." *Id.*, 247 Pa.Superior Ct. at 107–08, 371 A.2d at 1350. In Dauphin County, the district attorney denied eligibility for ARD treatment to all drunk drivers, whereas prosecutors in other counties felt free to move for such disposition in similar cases. The district attorney's recommendation was the sole basis for a defendant's contention in the program.

After analysis, this Court, referring to United States Supreme Court decisions, noted that "[t]erritorial uniformity is not a constitutional requisite." *Id.*, 247 Pa.Superior Ct. at 109–10, 371 A.2d at 1351 (citation omitted). In addition, this Court stated that "[t]he Constitution does not forbid the state from experimenting by utilizing disparate methods for different counties." *Id.* (citations omitted). Finally, this Court held that the Dauphin County policy was constitutional.[1]

One of the most noteworthy observations contained in the *Kindness* decision may be found in Judge Spaeth's concurring and dissenting opinion, where he recognizes the necessity to promulgate valid and fair rules to promote the administration of justice. In particular, Judge Spaeth comments, "[t]he validity of rules ... must be determined by what the rules do, not by who administers them." *Id.*, 247 Pa.Superior Ct. at 127, 371 A.2d at 1360. He concludes by expressing his hope that our supreme court will exercise its supervisory powers to render the ARD rules "constitutional." [2]

1. *See Commonwealth v. Lutz,* 508 Pa. 297, 311–12, 495 A.2d 928, 935 (1985) (discussing 75 Pa.C.S.A. §§ 1552, 3731).

2. This concurrence will not reach the issue of the rules' constitutionality.

Presently, the rules applicable to Accelerated Rehabilitative Acceleration include Pa.R.Crim.P. 160–186.[3] Clearly, the district attorney is responsible for determining which cases will be recommended for entry into the ARD program. *Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928 (1985). As a result, discretion is vested in the district attorney to decide whether an individual should be eligible for this sort of rehabilitation, or whether that individual's case should be rejected. Even within the same county, the district attorney's powers are unfettered and thus, as Judge Spaeth noted in his concurring and dissenting opinion in *Kindness, supra.*, the risk remains that "[h]is choices will always be arbitrary, no matter how principled he may be, for with no objective standard to guide and restrain him, they must be personal choices; and they may be arbitrary in a far more invidious sense than that." *Id.*, 247 Pa.Super. at 127–28, 371 A.2d at 1360.

My concerns today are less with the legality of the rules of criminal procedure[4] and more with the arbitrary standards through which they are employed. I do not advocate delimiting the prosecutor of all discretion. However, I am of the belief that to afford guidance to all of the Commonwealth attorneys and to guarantee equal protection to all citizens of the Commonwealth, the ARD program should contain and should be implemented according to uniform guidelines.

In *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986), the Pennsylvania Supreme Court recognized its

---

**3.** Pa.R.Crim.P. 160 was rescinded January 31, 1991, effective July 1, 1991, and replaced by new Rules 160, 161, and 162. *See,* in particular, Pa.R.Crim.P. 160(b)(2) (new rule) and 160(c)(2) and (d) (new rule). The rules presently in effect appear in volume 525 of the Pennsylvania State Reports. *See* Committee Introduction, Pa.R.Crim.P. 160, *et seq.*, at 525 Pa. at CL–CLV. *See also id.* at CL–CLXV. Rules 160–162 address the availability of and procedures for ARD in summary cases.

**4.** Judge Spaeth dedicates most of his discussion to the question of the constitutionality of the rules of criminal procedure as they relate to ARD. Here, I do not address that issue, but rather concentrate on the unequal application of these rules as between counties.

liberty to "interpret our Constitution in a more generous manner than the federal courts" have interpreted the Constitution of the United States.... In the equal protection area, however, we have chosen to be guided by the standards and analysis employed by the United States Supreme Court and have adopted those standards and analysis in interpreting and applying Article I, section 26 of our Constitution.

*Id.* 512 Pa. at 83, 515 A.2d at 1362–63 (citations and footnote omitted).

If we were to engage in an equal protection analysis, our duty would be to determine whether the State has created a classification which promotes unequal treatment. I do not think that such an evaluation is necessary here, as the Rules of Criminal Procedure do not, on their face, "carve out classifications or single out any distinct class of persons for unequal treatment, but by its terms applies equally to all." *Id.* 512 Pa. at 85, 515 A.2d at 1363. Additionally, as our supreme court recognized further:

Any equal protection problem with arbitrary classifications can ... arise *only upon enforcement* of the Act when the prosecutor or agency chooses to prosecute a violator under one or the other section. But that is a different issue than whether *the Act* creates classifications that may deny equal protection of the laws—that is an issue of "selective enforcement" by the prosecutor/agency. The United States Supreme Court addressed this precise issue in *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), and unanimously held that an act which contained two separate penalty provisions proscribing identical conduct does not violate equal protection principles.

*Id.* 512 Pa. at 85, 515 A.2d at 1363–64. *See also James v. SEPTA*, 505 Pa. 137, 143–44, 477 A.2d 1302, 1305 (1984).

Here, although ARD certainly may be classified as a penalty provision, it is nevertheless a beneficial choice, or at least an attractive option open to a defendant who has been charged with driving drunk. Under Pa.R.Crim.P. 176, "[a]f-

ter criminal proceedings in a court case have been instituted, the attorney for the Commonwealth may move, before a judge empowered to try court cases, that the case be considered for accelerated rehabilitive disposition." Once ARD proceedings are initiated, the defendant has a host of opportunities before him to prove himself worthy of the program and, in the end, to have the charges against him dismissed and to have his arrest record expunged. Pa. R.Crim.P. 185, 186. Conversely, if the defendant is not recommended to the court as a candidate for the ARD program, his case will proceed just as any other.[5] *See Commonwealth v. Melnyk*, 378 Pa.Super. 42, 548 A.2d 266 (1988). *See Lutz, supra.*

Cognizant of the fact that most district attorneys' offices have implemented procedures designed to insure that similarly situated defendants will receive similar treatment under like circumstances, my concern is not that prosecutorial discretion will be abused intra-county. I would like to see safeguards in the form of standards. I believe that uniform rules would help guarantee that when an individual crosses a county line, he will not become a criminal excluded from ARD consideration, simply because he was caught in a county with more stringent standards. *See Commonwealth v. Knowles*, 373 Pa.Super. 203, 540 A.2d 938 (1988) (cut-off point of .250% served the purpose of ARD). *Compare Knowles* with the instant case (the district attorney determined that any individual whose blood alcohol level exceeded .230% may not qualify for ARD treatment). Here, Hyde's blood alcohol level was .245%. Thus, had he been stopped in Monroe County (the situs of *Knowles*) rather than in Bedford County, he may well have been eligible for admission into the ARD program.

I neither condone drunk driving nor purport to suggest an appropriate cut-off point for admission into an ARD program. Rather, I acknowledge the value and benefits of

---

**5.** I realize, of course, that the trial judge has the power to dismiss a case under the appropriate circumstances, or to order probation. The discussion above is not meant to discount these possibilities.

the ARD program. However, enforcing the policy behind it, to wit, the rehabilitation of the offender and the protection of society (see *Knowles, supra.*, 373 Pa.Super. at 206–07, 208–09, 540 A.2d at 940, 941), should be the Commonwealth's goal. In order to accomplish this end, I believe it is incumbent upon the district attorneys in the various counties to enact uniform standards and procedures which will ensure that the same unlawful activity yields the same punishment. Currently, Pennsylvania employs arbitrary standards in admitting candidates or precluding admission into the ARD program as among counties.

My understanding of the procedures utilized in drunk driving cases is as follows. There is a presumption that one is intoxicated (for purposes of operating a motor vehicle) when one manifests a certain amount of alcohol in the bloodstream. Once a defendant is found behind the wheel of a vehicle with a blood alcohol level which assumedly affects his ability to drive safely, then he may be deemed intoxicated for statutory purposes and his case should be taken to the district attorney. At that time, the district attorney, in his/her discretion, enforces (and should enforce) the applicable rules against the defendant.

I do not dispute the prosecutor's duties. However, I am strong in my conviction that all defendants should be subject to the same rules. All defendants should be afforded equal treatment no matter where in the Commonwealth they are apprehended. By applying the laws and the courses of action evenhandedly, all defendants will be affected by the same procedures in the same way. By enacting uniform rather than arbitrary standards, those who violate the law will know their punishment, and those implementing and enforcing the law will understand their limits.

In *Kindness, supra.*, the majority stated: "[i]t may very well be that uniform statewide standards for ARD admission are desirable, but not everything that is desirable is constitutionally required." *Id.*, 247 Pa.Super. at 110, 371 A.2d at 1351. I believe, conversely, that in a mobile society

454

such as ours, the type of precedent which I propose has become a necessity. Thus, while I agree with the majority that "[a] defendant's admission into an ARD program is not a matter of right but rather a privilege," [6] I fail to see why every individual residing in this Commonwealth should not have the same rights and privileges as those in similarly situated positions.[7] *See James v. SEPTA*, 505 Pa. at 149–50, 477 A.2d at 1308 (Larsen, J., dissenting) (discussing the standards to be employed when evaluating an equal protection question).

---

6. Majority opinion, at 447.

7. The majority states: "The emphasis in Bedford County appears to be on the protection of society." Majority opinion, at 447. The *Lutz* case and its progeny make clear that in considering one's admission to an ARD program, the Commonwealth must take into consideration the protection of society *and* the defendant's rehabilitative needs and abilities. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985). I do not believe that the majority should confine itself to a discussion of only one prong of the test; whether the defendant can benefit from ARD is an equally strong concern. *See also Commonwealth v. Stranges,* 397 Pa.Super. 59, 579 A.2d 930 (1990) (en banc).