The STATE of Ohio, Appellee,

v.

NEWBERRY, Appellant. ■

The STATE of Ohio, Appellee,

v.

MICK, Appellant. ▮

[Cite as *State v. Newberry* (1991), 77 Ohio App.3d 818.]

Court of Appeals of Ohio,
Ross County.

Nos. 1672, 1704.

Decided Oct. 24, 1991.

*Richard G. Ward,* Prosecuting Attorney, and *William H. Allyn, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Alfred E. Baerkircher,* for appellants.

STEPHENSON, Presiding Judge.

This is a consolidated appeal taken from judgments of conviction and sentence entered by the Common Pleas Court of Ross County, Ohio, sentencing Brenda Newberry and Linda Mick, defendants below and appellants herein, to suspended prison terms and five years of probation for theft in violation of R.C. 2913.02. Appellants jointly assign the following error for review:

"Admission to a prosecutor's diversion program authorized by R.C. 2935.36 is a benefit entitled to protection by due process under the Ohio Constitution, Article I, Section 16, and the Fourteenth Amendment of the United States Constitution[.]"

A short summary of the facts pertinent to this appeal is as follows. On December 16, 1988, appellant, Brenda Newberry, was indicted for theft on the grounds that, between January 1, 1987 and July 31, 1988, she received "food stamps" valued at $892 without disclosing that she had been receiving income

as a result of her periodic employment as a telephone solicitor. Similarly, on October 27, 1989, appellant, Linda Mick, was indicted for theft on the grounds that, between May 1, 1988 and July 31, 1989, she received "ADC benefits and food stamps" valued at $4,275 without making full disclosure of her husband's employment income.

Both appellants applied to participate in the Ross–Pike County Prosecutor's Diversion Program and both were denied admittance. Appellants then requested hearings on the rejection of their respective applications, but these were denied as well. Thereafter, appellants both entered no contest pleas and were, subsequently, found guilty and sentenced on those charges specified in their indictments. These appeals followed and on August 2, 1990, we ordered these cases to be consolidated so as to consider whether an individual has a due process right to a hearing upon the denial of their admittance into a diversionary program.

Initially, we note that a county prosecutor is authorized to implement a pretrial diversion program for certain offenders under R.C. 2935.36(A) provided that such program is operated under written standards approved by the presiding judge of that county's court of common pleas. In March 1981, the "Pike/Ross Diversion Program" (hereinafter referred to as "the program"), was approved under authority of that statute. As appellants concede, neither R.C. 2935.36 nor the journal entry which approved the program below make provision for a hearing upon denial of admittance to the program. Nevertheless, appellants argue that "procedural due process under the Fourteenth Amendment to the United States Constitution and under the Ohio Constitution requires that a hearing be provided to a person denied or terminated from diversion." We disagree.[1]

 Section 1, Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]o state shall * * * deprive any person of

---

[1]. At the outset, it should be noted that our decision herein is on a much narrower basis than the broad propositions of law advanced by appellants. For instance, we do not reach the issue of whether a due process hearing is required when a person is terminated from a diversion program. Such an action did not occur below and, accordingly, that issue is not properly before us at this time. See *State v. Howard* (Feb. 25, 1991), Scioto App. No. 89CA1840, unreported, at 5, 1991 WL 28326. Moreover, we do not address whether the Ohio Constitution would require a due process hearing upon the denial of admission to such a program. Although appellants make a passing reference to the Ohio Constitution in their brief, they present no separate argument on this issue and we, therefore, do not specifically address it. See App.R. 12(A). Even if we were to address the constitutional requirements of this state, our analysis would be the same as both Constitutions afford substantially similar due process safeguards. See *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 317, 17 O.O.3d 203, 204, 408 N.E.2d 689, 691. In any event, our decision herein is limited to the argument made in appellants' brief as to whether the United States Constitution mandates a due process hearing upon the denial of admission to a diversion program.

life, liberty or property without due process of law." This section both protects the substantive aspects of liberty against unconstitutional restrictions by the states as well as provides a procedural guarantee against the deprivation of liberty. See *Harrah Indep. School Dist. v. Martin* (1979), 440 U.S. 194, 197, 99 S.Ct. 1062, 1063, 59 L.Ed.2d 248, 253; *Kelley v. Johnson* (1976), 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708, 713. The concepts of "substantive" and "procedural" due process coexist as dual, but separate, aspects of the Due Process Clause. 16A American Jurisprudence 2d (1979) 967, Constitutional Law, Section 812. The purpose behind a procedural due process requirement is to ensure that whenever government action deprives a person of life, liberty or property, such a deprivation is implemented in a fair manner. See *United States v. Salerno* (1987), 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697, 708. This would, ordinarily, require notice and the opportunity for a hearing. *Deacon v. Landers* (1990), 68 Ohio App.3d 26, 29, 587 N.E.2d 395, 397.

However, the actual determination of whether any procedural protections are due is dependent upon the extent to which the individual will be condemned to suffer *grievous loss. Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494; *Goldberg v. Kelley* (1970), 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1017–1018, 25 L.Ed.2d 287, 296. Thus, where an individual suffers no loss or enjoys no liberty or property interest subject to governmental deprivation, then there is little need for procedural safeguards. In other words, the type of interest protected by procedural due process is one which is "presently enjoyed." *Menechino v. Oswald* (C.A.2, 1970), 430 F.2d 403, 408. We can discern no such interests enjoyed by appellants below.

At the time their applications for diversion were rejected, appellants enjoyed no interest in remaining free from prosecution for their offenses. Rather, appellants were only entitled to be considered for participation in the program. The record reveals that they were considered and then rejected for differing reasons. That being said, we are not persuaded that appellants' mere expectations of participating in the program rose to such a level that procedural due process safeguards must be afforded.[2] Appellants cite no

---

2. Appellants cite *Kelly v. Railroad Retirement Bd.* (C.A.3, 1980), 625 F.2d 486, 487, and counter-argue that they cannot be denied a hearing merely because they had not already been accepted into the program. We are not persuaded. To begin, the court in *Kelly* did not even reach the procedural due process argument, as it determined that the agency had violated its own regulations by not affording a hearing when an applicant was determined ineligible to receive a "disabled child's annuity." *Id.* at 490. To the extent that dicta in the opinion suggested that a due process hearing should be afforded upon a determination of ineligibility to receive a benefit, we note that the court determined therein that the claimant

authority which specifically supports their argument on this issue and we are aware of none. To the contrary, our research reveals several commentators who join our conclusion that a due process hearing is not required upon the rejection of an application to such a program. See, *e.g.*, 2 LaFave & Israel, Criminal Procedure (1985) 221, Section 13.6; Note, Criminal Practice—Pretrial Intervention Programs—An Innovative Reform of the Criminal Justice System (1975), 28 Rutgers L.Rev. 1203, 1214–1216.

■ Our holding in this case is not inconsistent with the numerous Supreme Court cases relied upon in appellants' brief. Those cases arose under circumstances where an existing entitlement was to be discontinued. See, *e.g.*, *Morrissey, supra*, 408 U.S. at 472, 92 S.Ct. at 2596, 33 L.Ed.2d at 489 (revocation of existing parole); *Goldberg, supra*, 397 U.S. at 255, 90 S.Ct. at 1014, 25 L.Ed.2d at 292 (termination of receipt of public assistance benefits); *Bd. of Regents v. Roth* (1972), 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (termination of existing employment); *Perry v. Sinderman* (1972), 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570, 578 (termination of existing employment). These cases are inapposite to the cause *sub judice* as the recipients therein were already enjoying benefits when the benefits were terminated, whereas the appellants below had no such interests.[3]

---

already possessed a property interest in this benefit which had been earned through the employment of her deceased father. As stated previously in this opinion, we can discern no similar interest which appellants could have obtained in the diversion program below. Moreover, we acknowledge the following admonishment by the Supreme Court in *Lyng v. Pang* (1986), 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921, 936:

"We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the * * * Fourteenth Amendment."

This court is bound by decisions of the United States Supreme Court on issues concerning federal constitutional rights. *State v. Lewis* (1990), 70 Ohio App.3d 624, 637, 591 N.E.2d 854, 862. Until such time as that court or our own Supreme Court construes the Due Process Clause as requiring a hearing for those applicants who have been rejected from participating in a diversion program, we decline to accept the analogy which appellants would have us draw to cases such as *Kelly, supra*.

3. Appellants also refer to the decisions of *Commonwealth v. Melnyk* (1988), 378 Pa.Super. 42, 548 A.2d 266, and *Dearborne v. State* (Tenn.1978), 575 S.W.2d 259. However, appellants' brief neglected to make any reference, in its table of authorities, to a reporter in which these cases could be found. At the very minimum, we believe that the table of cases required by App.R. 16(A)(1) mandates that a reference to a reporter be made in conjunction with a case citation. This information should not be left for an appellate court to uncover. Nevertheless, in the interests of justice, we have considered those cases to which we believe appellants were citing and have found them to be inapposite to the cause *sub judice*. See *Melnyk, supra*, 378 Pa.Super. at 53, 548 A.2d at 272 (substantive due process claim of invidious discrimination because an inability to pay full restitution prohibited defendant from participating in diversion program); *Dearborne, supra*, at 263–264 (question as to whether a request for diversion can be made prior to indictment).

On the basis of the foregoing, appellants' assignment of error is overruled and the judgments are affirmed.

*Judgments affirmed.*

PETER B. ABELE, J., concurs.

HARSHA, J., not participating.