J-S77027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS GARCIA | : | |
| | : | |
| Appellant | : | No. 3888 EDA 2016 |

Appeal from the Judgment of Sentence August 16, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012001-2014

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 29, 2019**

Appellant Luis Garcia seeks review of the Judgment of Sentence imposed following a bench trial. He challenges the sufficiency of the evidence supporting his convictions of Possession with Intent to Deliver a Controlled Substance ("PWID") and Possession of a Controlled Substance ("Possession").[1]  After careful review, we affirm.

We glean the factual and procedural history from the certified record. On September 19, 2014, around 10:20 PM, Philadelphia Police Detective Thomas Robinson and his partner, both members of the Narcotics Strike Force, were conducting surveillance in plainclothes in an unmarked vehicle on the 2800 block of B Street located in a section of Philadelphia known for its

_____

[1] 35 P.S. § 780-113(a)(30) and 35 P.S. § 780-113(a)(16), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

illegal drug trade.[2]  While seated in his parked car on the west side of the street, Detective Robinson observed Appellant on the east side of the street, approximately thirty to fifty feet away, as a man approached him.  Appellant and the man had a brief conversation during which the man handed Appellant cash and Appellant in return gave the man what appeared to be a small item. The man walked away on Somerset Street.  Believing that he had just witnessed a narcotics transaction, Detective Robinson radioed a flash description of the alleged buyer to Police Officer Eddie Ashburn, also of the Narcotics Strike Force.  Officer Ashburn arrested the buyer approximately 10 minutes after the transaction.  He found a small packet of heroin labeled "Megaman" and two small vials containing crack cocaine on the buyer's person.

Meanwhile, Detective Robinson continued to watch Appellant who remained on B Street.  Ten minutes later, another man approached Appellant and they began to argue.  After a couple of minutes, the second man walked away quickly down B Street; Appellant quickly left after a brief pause. Believing that his undercover position had been compromised, Detective Robinson radioed a flash description of Appellant and asked uniformed police officers to stop him.  As the responding police officers approached from different directions, Detective Robinson saw Appellant make a throwing

---

[2] At the time of this incident, Detective Robinson had over 17 years' experience in the Philadelphia Police Department, including 10 years on the Narcotics Strike Force.  N.T. Trial, 5/12/16, at 32.

motion towards a fence abutting a vacant lot on B Street near the corner of Tusculum Street.

Police Officer Mauricio Rodriguez stopped Appellant based on the flash description, and Detective Robinson identified him. Officer Rodriguez searched Appellant's pocket and recovered $11 in cash. Although Officer Rodriguez looked on the outside of the fence and over the fence where Detective Robinson thought he saw Appellant throw something, he did not go into the lot because of the amount and type of debris, including needles, scattered throughout. **See generally** N.T. Trial, 5/12/16, at 12-47.

The Commonwealth charged Appellant with one count of PWID and one count of Possession. Appellant proceeded to a bench trial, where three police officers testified for the Commonwealth. Detective Robinson testified regarding his observations of the events that occurred before, during, and after the hand-to-hand transaction. He also testified that the total value of the drugs found on the alleged buyer was $20: $10 for the heroin and $5 for each of the crack vials. Officer Ashburn testified regarding his stop and search of the alleged buyer. Officer Rodriguez testified regarding his stop and search of Appellant.

Appellant moved for a Judgment of Acquittal, which the court denied. Appellant presented testimony from, *inter alia*, David Leff, an expert in narcotics trafficking, who opined that because Appellant did not have loose rubber bands, empty plastic bags, drugs, or more than $11 cash on his person, nothing suggested that Appellant had been engaged in selling narcotics at the

time of his arrest. *See id*. at 62, 72-3.[3] Leff opined that the alleged buyer, who gave the police a home address of 2547 North 31st Street, located approximately 3¾ miles away from the transaction site, would not have gotten the "block price" for living in the area, *i.e.*, a discount. *Id*. at 62. Rather, the buyer would have paid the going rate, which would be $20 total in this case, "if not more based upon his residence." *Id*. at 61-2, 70. Leff, thus, concluded that $11 was "simply not enough under the circumstances of an out-of-the-area alleged buyer to possess $20 worth of drugs[,]" particularly in the "absence of any type of physical indicia … to suggest that he's engaged in narcotics trafficking." *Id*. at 72.

Leff acknowledged that B Street and the surrounding area was known for the sale of crack and heroin, that a hand-to-hand transaction on B Street could be a narcotics transaction, and that it was "not uncommon" for drug dealers to discard drugs or handguns when seeing police officers approach. *Id*. at 64, 75-6.

The court found Appellant guilty, and ordered a pre-sentence investigation. On August 16, 2016, the court sentenced Appellant to six to twelve months' incarceration with immediate parole, followed by five years' probation. The court also directed Appellant to get his GED, engage in job training, and continue with drug and alcohol treatment.

---

[3] Leff contended that even if Appellant had sold the last of his bundle of drugs to the alleged buyer, Appellant would have had rubber bands and baggies on his person. *See* N.T. at 62-3.

- 4 -

After the denial by operation of law of Appellant's Post-Sentence Motion, Appellant filed a timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following question for this Court's review:

Was not the evidence insufficient to sustain [A]ppellant's conviction for delivery and possession of a controlled substance where there was an exchange of an item for cash between [A]ppellant and another male who was later arrested for drug possession, but nothing [A]ppellant possessed upon arrest indicated that he sold crack and heroin to the alleged buyer?

Appellant's Brief at 3.

"A claim challenging the sufficiency of the evidence is a question of law."

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The standard and scope of review applicable to a challenge to the sufficiency of the evidence is well-settled:

[O]ur standard of review is *de novo* and our scope of review is plenary. In assessing Appellant's sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

***Commonwealth v. Hutchison***, 164 A.3d 494, 497 (Pa. Super. 2017) (internal citations, quotation marks, and brackets omitted), *appeal denied*, 176 A.3d 231 (Pa. 2017).

Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses

and the weight of the evidence—is free to believe all, part, or none of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted). In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id***. (citation omitted).

Moreover, "[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal." ***Commonwealth v. Reynolds***, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

Here, the court found Appellant guilty of PWID and the lesser-included offense of possession. Evidence is sufficient to support a conviction for Possession if the Commonwealth shows that the defendant, "[k]nowingly or intentionally possessed a controlled or counterfeit substance[.]" 35 P.S. § 780-113(a)(16). "Possession can be proven by showing actual possession, *i.e.*, a controlled substance found on the [appellant's] person, or by showing that the [appellant] constructively possessed the drug." ***Commonwealth v. Macolino***, 469 A.2d 132, 134 (Pa. 1983).

In this case, the evidence showed that Officer Robinson, an experienced narcotics detective conducting undercover surveillance in an area known for illicit drug sales, observed Appellant hand a small object to an individual in exchange for cash. Police recovered drugs from that individual shortly thereafter. Based on that discovery, and combined with Appellant's other behavior—walking quickly away after arguing with a second man, and making tossing motions over a fence as police officers approached—when viewed in the totality of the circumstance in the light most favorable to the Commonwealth as the verdict winner, it was reasonable for the court to infer that Appellant possessed the drugs before he handed them to the buyer. Accordingly, there was sufficient evidence to support the simple Possession conviction.

The court also found Appellant guilty of PWID. As provided in 35 P.S. § 780–113(a)(30), an actor is prohibited from delivering controlled substances without proper authorization. Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance...." 35 PS. § 780–102. For a defendant to be liable for the delivery of a controlled substance, "there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1233–34 (Pa. 2004) (citing *Commonwealth v. Metzger*, 372 A.2d 20, 22 (Pa. Super. 1977)). "A defendant actually transfers

drugs whenever he physically conveys drugs to another person." ***Murphy***, ***supra*** at 1233. "Section 780–113(a)(30) does not require that a party make a profit, it simply prohibits 'delivery.'" ***Commonwealth v. Morrow***, 650 A.2d 907, 912 (Pa. Super. 1994).

As noted above, a conviction may be sustained wholly on circumstantial evidence. ***Melvin***, ***supra*** at 39-40.

Appellant contends that only conjecture supports his convictions for possession and delivery of a controlled substance. Appellant's Brief at 9-10. He asserts that because Appellant had no drugs and only $11 on his person at the time of his arrest, the evidence is insufficient to conclude that he possessed and delivered the narcotics found on the individual with whom he had interacted just ten minutes before that man's arrest. ***Id***.

While Appellant acknowledges that circumstantial evidence can wholly support a verdict, he nonetheless asks us to consider the evidence that was **not** presented in order to vacate his conviction. Our standard of review does not allow us to do so. ***See Commonwealth v. Meals***, 912 A.2d 213, 222–23 (Pa. 2006) (noting that it is improper for this Court to reweigh the evidence and give "more weight to 'absent' factors than to those found and relied upon by the trial court[.]"). Rather, as noted above, an appellate court must consider the evidence that **was** presented in the light most favorable to the Commonwealth as the verdict winner.

Here, the trial court heard testimony, which it found credible, from a narcotics detective with nearly ten years of experience in conducting surveillance in that area of Philadelphia, an area well-known for illicit drug sales, regarding his knowledge of how hand-to-hand drug sales generally occur on the street and what he observed in this case. Detective Robinson also testified regarding his observation of Appellant making a tossing motion over a fence after uniformed police officers began their approach on B Street. Both the detective and Appellant's own expert testified it is "not uncommon" for drug dealers to toss drugs and guns upon seeing police officers approach them. In addition, when police officers stopped the man with whom Appellant had conducted the hand-to-hand transaction shortly after the transaction, they found drugs on the buyer consistent with the type and packaging of drugs sold in that area.

The fact that Appellant did not have $20 or drugs on his person when he was arrested does not negate the evidence presented to, and found to be credible by, the trial court sitting as the fact finder. Appellant is essentially asking us to reweigh the testimony of the witnesses and resolve conflicts in the evidence in his favor. This we will not do. *See Melvin*, *supra* at 39-40 (noting credibility determinations are within the province of the factfinder and will not be disturbed on appeal); *Reynolds*, *supra* at 726 ("[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a

determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal.").

We conclude that the evidence is not "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, **supra** at 661. Thus, viewing the evidence in the light most favorable to the Commonwealth in accordance with our standard of review, we conclude that sufficient evidence supports the convictions.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/29/19</u>