J-S43033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BERNARDO ORTEGA | : | |
| | : | |
| Appellant | : | No. 1851 EDA 2025 |

Appeal from the PCRA Order Entered June 6, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004650-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 15, 2026**

Appellant, Bernardo Ortega, appeals *pro se* from the post-conviction court's June 6, 2025 order dismissing his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the pertinent facts and procedural history of Appellant's case, as follows:

> On or about May 17, 2023, in Hatfield Township, Montgomery County, Appellant negotiated a purchase of two (2) kilos of cocaine with an undercover state police officer. Subsequently, Appellant and his codefendant did in fact sell two (2) kilos of cocaine to an undercover state police officer on that date. On April 15, 2024, Appellant entered a negotiated guilty plea, with the assistance of counsel, Daniel Nathan Schwartz, Esquire, to count 1[,] possession with intent to deliver [(PWID)] cocaine over 1,000 grams, an ungraded felony, and count 3[,] criminal conspiracy [to commit PWID]…, also an ungraded felony. Appellant received a sentence at count 1 of not less than four (4) years, nor more than eight (8) years, [in] a State Correctional Institution with commitment to date from April 15, 2024[,] and with credit from

May 17, 2023[,] to April 15, 2024[,] and at count 3[,] to eight (8) years of probation to date from April 15, 2024[,] and to run concurrent with the [sentence on] count 1. Appellant was ordered to comply with the Pennsylvania Rules of Probation and Parole and to pay the appropriate supervision fee and cost of prosecution. Appellant was ineligible for any state programing.

Appellant did not file post-trial motions nor seek a direct appeal to the Superior Court in this matter. On February 24, 2025, Appellant filed a timely[,] *pro se* … []PCRA[] petition. This court appointed Joshua Rudolph, Esquire, to represent Appellant on his PCRA by order entered on February 28, 2025. On April 29, 2025, counsel filed a "no merit" letter in accordance with **Commonwealth v. Turner**, … 544 A.2d 927 ([Pa.] 1988)[,] and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988), together with a[ motion] to withdraw as court appointed counsel for Appellant.

On [May 1], 2025, a "Notice of Intention to Dismiss [Appellant's] PCRA Petition Without a Hearing pursuant to Pennsylvania Rules of Criminal Procedure 907(1)" was entered. Appellant was advised in the order that he could file a response with the Clerk of Courts within twenty (20) days. No such response to the notice of intent to dismiss was filed. On June [6], 2025, a final order of dismissal of [the] PCRA petition was entered in this matter following [a] review of Appellant's PCRA petition, along with an order granting counsel's motion to withdraw. On June 2[3], 2025, Appellant appealed the final order of dismissal, although [the] same was not docketed until July 11, 2025.[1]

_____

[1] Appellant is incarcerated and the appeal was filed *pro se*. Appellant dated the notice of appeal June 20, 2025, but the notice of appeal envelope is postmarked June 23, 2025. **See** Document #47, Certified Trial Court Record. Thus, pursuant to the prisoner mailbox rule, we deem Appellant's appeal as having been timely filed on June 23, 2025. **See** Pa.R.A.P. 121(f) ("A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence"). We also note that, even if Appellant's appeal had not been timely filed under the prisoner mailbox rule, we would deem it timely because the trial court's docket failed to indicate service to Appellant of the order dismissing his petition. **See**
*(Footnote Continued Next Page)*

On July [23], 2025, in accordance with Rule 1925(b) of the
Pennsylvania Rules of Appellate Procedure, this court directed
Appellant to file and serve upon this court a concise statement of
[errors] complained of on appeal within twenty-one (21) days of
the date of [the] order.[2]  On August 8, 2025, said statement was
received.

PCRA Court Opinion (PCO), 8/14/25, at 1-2 (footnotes, citations to the record,

and unnecessary capitalization omitted).  The PCRA court filed its Rule 1925(a)

opinion on August 14, 2025.

Herein, Appellant states three issues for our review:

[I.] Was counsel ineffective during a critical phase of litigation?

[II.] Was counsel ineffective when counsel failed to contest the
states [*sic*] case with evidence that was available to support a
defense?

[III.] Was there a constructive denial of counsel?

Appellant's Brief at 5 (unnecessary capitalization omitted).

We begin by noting that the Argument section of Appellant's brief is not

"divided into as many parts as there are questions to be argued[,]" and it does

not "have at the head of each part--in distinctive type or in type distinctively

---

Pa.R.Crim.P. 114(C)(2)(c) (stating that docket entries "shall contain" the
"date of service of the order").  We have held that,

[w]here the trial court docket in a criminal case does not indicate
service on a party or the date of service, we will not quash the
appeal or require further proceedings.  Rather, we will treat the
time in which to take an appeal as never having started to run and
treat the appeal as timely.

***Commonwealth v. Midgley***, 289 A.3d 1111, 1117 (Pa. Super. 2023).

2 The court's order was dated July 14, 2025, but was not docketed until July
23, 2025.  Again, the docket failed to indicate service to Appellant of that
order.

displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent[,]" as required by Pa.R.A.P. 2119(a).  Instead, Appellant presents one, uninterrupted argument under the heading, "Ineffective Assistance of Counsel[,]" and the subheading, "Constructive Denial of Counsel."  Appellant's Brief at 8.  Despite Appellant's failure to adhere to our Rules of Appellate Procedure, we will not quash his appeal or deem his issues waived on this basis, as we can discern, and meaningfully address, the arguments he seems to be raising herein.

Namely, although Appellant's argument is rather confusing, he appears to be contending that his trial counsel was ineffective for not asserting that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to disclose background information about a confidential informant (CI) in this case, as well as communication that the CI had with law enforcement about Appellant.  Appellant's Brief at 9.  Appellant also seems to be arguing that his counsel was ineffective for not raising a defense of entrapment.  **See id.** at 9-10.  Additionally, Appellant states that the trial court erred by "threaten[ing] … Appellant" that he would have to represent himself when Appellant indicated to the court, at the guilty plea proceeding, that he wished to fire his attorney.  **Id.** at 8.  Appellant argues that the court "never investigated … why he wanted to fire his lawyer[,]" and he suggests that he was improperly compelled to continue with his attorney's ineffective representation, and enter an involuntary guilty plea, or face having to proceed *pro se* at trial.  **Id.** at 9.

- 4 -

In addressing Appellant's claims, we recognize that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)).  Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner.  To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner.  A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Here, we first reject Appellant's claim that his trial counsel was ineffective for not asserting that the Commonwealth committed a *Brady*

violation. The only portion of Appellant's argument that appears to address his ***Brady*** issue is the following, *verbatim* language:

> prior to May 17, 2023 the day the Appellant was arrested, an unnamed CI, [CI 1], reached out to law enforcement about the Appellant , that communication by / between law enforcement an CI 1 was "Not Turned Over" to the defence inpart or as a whole so the defence was unaware of CI 1's back round, in violation of **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194 (1963); also see **US v. Agurs**, 437 U.S. 97, 103-107, 96 S.Ct. 2392 (1976), even if the failure to turnover the CI's statement(s), [communication's with law enforcement], was inadvertent, it's nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment, see **Strickler v. Greene**, 527 U.S. 263, 119 S.Ct. 2392 (1999), as the court's will note, in this case, through an informent, [who was possibley], under pressure of a plea agreement requiring the informant to help gather information concerning drug dealing has been ruled as "**ENTRPMENT**", see **Commonwealth v. Wright**, 578 A.2d 513 (1990), also see **Hampton v. U.S.**, 425 U.S. 484, 96 S.Ct. 1646 (1976),

Appellant's Brief at 9.

Notably, Appellant does not explain what specific information about the CI he believes the Commonwealth suppressed, or how it would have been favorable to his defense. ***See Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012) ("[T]o establish a ***Brady*** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) ***the evidence was favorable to the defendant***; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.") (emphasis added). Thus, he has not demonstrated that his ***Brady*** claim has merit, or that he was prejudiced by his trial counsel's failure to raise it. ***See Commonwealth v. Spotz***, 896 A.2d

1191, 1210 (Pa. 2006) (explaining that counsel will not be deemed ineffective for failing to raise a meritless claim) (citation omitted).

The same is true for Appellant's contention that his trial counsel was ineffective for not asserting an entrapment defense. Appellant's confusing, *verbatim* argument in regard to this claim consists of the following:

> the court's held; 1) entrapment has 2 related elements, government inducement of a crime and lack of predisposition on part of defendant to engage in criminal conduct, 2) "predisposed defendant" for purpose of defendants allegation of entrapment, is one who is ready and willing to commit the offense. To show "entrapment ", a defendant must prove that he lacked a predisposition to commit the crime, but that his will was overborne by unrelenting government persistance. see Exhibit "A", where Cl 1 "kept calling the appellant while working as a agent of the state" ... "selective prosecution" and "entrapment" are complete defences to a crime, once the defences of entrapment is properly raised, the government must prove beyond a reasonable doubt that the defendant was not entrapped ... counsel failed to want to raise this defence which is why the appellant wanted to fire counsel prior to the compelment of the gulity plea, because to prove "entrapment", a defendant must show that, 1) that the government induced him to commit a crime, [here the government used a agent Cl 1 to set up a drug deal], which is a crime, and 2) he lacked predispostion to engage in criminal activity ... [the Appellant has never been arrested for any crime, and the Appellant was made to reach out to his codefendant, who was the source of drugs], so it's safe to say the Appellant lacked predisposition to engage in criminal activity.

Appellant's Brief at 10.

Again, Appellant has not demonstrated any merit to his claim that he was entrapped and, thus, he has not proven that his counsel was ineffective for not putting forth this defense. We have explained:

> Entrapment occurs when a law enforcement official or someone acting in cooperation with such official "induces or encourages

another person to engage in [criminal conduct] by either making knowingly false representations designed to induce the belief that such conduct is not prohibited or employing methods of persuasion or inducement which create a substantial risk that such offense will be committed by persons other than those who are ready to commit it." 18 Pa.C.S.[] § 313.

*Commonwealth v. Morrow*, 650 A.2d 907, 913 (Pa. Super. 1994). Instantly, Appellant's confusing and cursory argument is insufficient to explain how entrapment occurred in his case. He has failed to establish that police knowingly made false representations to him or employed any improper methods of persuasion in this case. Therefore, he has not demonstrated that he was prejudiced by his counsel's failure to assert this meritless defense. *See Spotz*, *supra*.

We also recognize that counsel did not raise a *Brady* claim, or an entrapment defense, because Appellant ultimately chose to plead guilty. It is well-settled that "upon entry of a guilty plea, a defendant waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the 'legality' of the sentence imposed[.]" *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1275 (Pa. 2014) (citation omitted). Thus, by pleading guilty, Appellant waived the *Brady* claim and entrapment defense he now contends his counsel should have raised.

Appellant suggests, however, that his guilty plea was involuntarily induced by his counsel's purported ineffectiveness. He also seemingly claims that he wanted to fire his attorney for not asserting a *Brady* claim or entrapment defense, but he was compelled to continue with his counsel, and

enter his guilty plea, due to the trial court's 'threatening' that he would have to proceed *pro se* and go to trial if he fired his attorney.

The record belies Appellant's arguments. Instead, we agree with the PCRA court that "[t]he record demonstrate[s] that Appellant knowingly, intelligently, and voluntarily entered into a negotiated guilty plea agreement." PCO at 8. The court explained:

Appellant completed a written guilty plea colloquy, in which he acknowledged that he was satisfied with his attorney's representation and that he had sufficient time to talk with his attorney before reading the written colloquy and deciding to plead guilty. Appellant not only answered the questions on the guilty plea colloquy but also initialed each page and signed the last page. Appellant's counsel also signed the last page certifying that Appellant was advised of the meaning of the guilty plea colloquy and counsel's belief that Appellant understood the questions and the consequences of accepting or rejecting the final offer in the case. (Written Guilty Plea Colloquy, 4/15/24). Appellant also acknowledged that no promises had been made to him to enter his plea of guilty other than any plea agreement that had been negotiated for him by his attorney. (Written Guilty Plea Colloquy, 4/15/24). Appellant further acknowledged no one had forced him to plead guilty and that he was entering his guilty plea of his own free will. ***Id.***

Additionally, this court note[s] that it communicated with the Appellant through the assistance of a Spanish interpreter. This court also notes that at the outset of the guilty plea, it spoke to the Appellant because it had been advised that Appellant wished to dismiss his current counsel and retain his own attorney. The court explained that if … Appellant [fired] his current counsel, he would not receive another appointed attorney[, a]nd if he could not come up with the money to hire an attorney, he would have to represent himself. Appellant indicated that he understood. The [court] then gave … Appellant an opportunity to consider his options and to talk to his attorney [one more] time. The court stated the following:

COURT: Okay. So[,] here's what I'd like you to do: I'd like you to think about this.

APPELLANT: Yeah.

COURT: Because this is a major decision on your part.

APPELLANT: Yeah.

COURT: And you don't want to make a decision that's going to be harmful to you or expose you to more harm; do you understand?

APPELLANT: Yeah.

COURT: I'd like you to talk to your attorney one more time, and then he'll tell me what you want to do, and we'll do whatever you want. If you want to fire him, I'll dismiss him; you'll be on your own and you'll face the charges that the District Attorney originally brought.

(N.T., 4/15/24, [at] 8-9). Once … Appellant returned from speaking with his counsel, … Appellant's counsel told [the court] that … Appellant wanted to have a furlough because of a serious illness[. W]hile the court was sympathetic to that, it could not release [Appellant] because he had a detainer from [Immigration and Customs Enforcement (ICE)], which Appellant [stated he] understood. ([*Id.* at] 9-10).

As part of the [plea] colloquy, the court restated that Appellant had initially indicated that he was thinking about firing his attorney and either represent[ing] himself or find[ing] another attorney. The court and … Appellant then had the following exchange on this issue:

COURT: So[,] you do wish to fire your attorney?

APPELLANT: No.

COURT: Oh, okay. So[,] you've changed your mind? You're now willing to have him represent you, correct?

APPELLANT: Yeah.

([*Id.* at] 17). … [A]lso[,] during the guilty plea proceeding, the court administered an oral guilty plea colloquy in which … Appellant admitted his guilt, agreed with the facts of the case, confirmed that he understood the nature of his charges[,] and was

knowingly and voluntarily entering into the negotiated guilty plea agreement. ([***Id.*** at 11-21]). Additionally, the court went through a lengthy dialogue during the oral colloquy with … Appellant[,] making sure all of the rights he was giving up were fully explained to him. ([***Id.***]). The court ended this portion of its dialogue with … Appellant with the following exchange:

COURT: Sir, has anyone forced you, threatened you, or promised you anything to get you to plead guilty today?

APPELLANT: No.

COURT: It's your decision?

APPELLANT: Yeah.

COURT: Is it made of your own free will?

APPELLANT: Yeah.

COURT: Have you had enough time to think about it?

APPELLANT: Yes.

COURT: Have you had enough time to speak with your attorney?

APPELLANT: Yeah.

COURT: Are you satisfied with his advice and his representation?

APPELLANT: Yes.

COURT: Has he answered all the questions that you may have had?

APPELLANT: Yeah.

([***Id.*** at] 17-18). Appellant's counsel even went as far [as] to have the following exchange with … Appellant:

COUNSEL: [Appellant], you understand that there is a federal immigration detainer filed against you?

APPELLANT: Yeah.

COUNSEL: Do you understand that by pleading guilty, this will have an effect on the status of the immigration charges against you; do you understand that?

- 11 -

APPELLANT: Yeah.

COUNSEL: You also have an immigration lawyer, separate from me, that's trying to handle your immigration case?

APPELLANT: Yeah.

([*Id.* at] 19). Based upon the written guilty plea colloquy executed by … Appellant[,] and the oral colloquy with Appellant at the time of the guilty plea hearing, the court subsequently determined that Appellant had knowingly, voluntarily[,] and intelligently pled guilty and [it] accepted the plea agreement. ([*Id.* at] 21…). Any contention by … Appellant to the contrary [is] belie[d by] the evidence of record.

PCO at 8-12.

After reviewing the record, we conclude that it supports the PCRA court's determination that Appellant's guilty plea was knowing, intelligent, and voluntary; it does not support Appellant's insistence that he was unhappy with his counsel, but had to continue with his attorney's representation and enter an involuntary guilty plea because the court threatened him that he would have to proceed *pro se* to trial if he fired his counsel. Instead, the court informed Appellant of his options if he chose to fire his court-appointed attorney, it gave Appellant time to consult with his counsel about that decision, and Appellant then notified the court that he had chosen to proceed, both with his counsel's representation and with the entry of his guilty plea. Nothing in this record suggests that Appellant was forced into this decision because of statements or actions by the trial court or his counsel.

Moreover, we concur with the PCRA court that the record

belies [any] allegation that ineffective assistance of counsel induced [Appellant] to enter into the plea. Rather, counsel took appropriate measures to ensure among other things that Appellant was explained what a person must have done to commit

the crime(s) that he was pleading guilty [to], he admitted to committing those crimes, he understood his constitutional rights to a jury trial and/or a bench [t]rial, he understood the burdens of proof and the presumption of innocence that applies in criminal cases, he understood the maximum/minimum sentences for which he was pleading guilty, and he understood the sentencing guidelines. Additionally, Appellant testified, under oath, several times, that no one forced, threatened, or coerced him into entering his plea of guilty, there were no promises made to him regarding the sentence, he was satisfied with his attorney's representation, his attorney explained and answered all of his questions, and he understood his appellate rights. Simply stated, there [is] no basis in law or fact to support Appellant's claim[s] of ineffective assistance of counsel.

*Id.* at 12.

In sum, the record demonstrates that Appellant's guilty plea was voluntary, knowing, and intelligent, and nothing indicates that Appellant's plea was compelled or induced by counsel's alleged ineffectiveness, or actions by the trial court. Thus, Appellant waived his claim that the Commonwealth had an obligation under *Brady* to turn over information about the CI, or any defense that he was entrapped into committing the offenses with which he was charged, by entering his guilty plea.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026

- 13 -